THE AMERICAN PRINT WORKS v. LAWRENCE.

1. The *destruction* of private property for public use is *taking it* for public use within the meaning of the constitutional provision.

2. The taking private property for public use, or State necessity, is a right of *eminent domain* incident to *sovereignty*. It is this right that is restrained by the Constitution.

3. The right to destroy property in cases of extreme emergency is not an exercise of the right of *eminent domain*, or taking it for public use. It is a natural right, founded on the *law of necessity*, well settled at common law, and is to be exercised by individuals, and not by the sovereign power.

4. A legislative enactment regulating the exercise of this *right of necessity* does not make it a taking of private property for public use.

5. A law submitting it to certain persons *to determine* when this necessity exists, and to act upon it, is not unconstitutional, as taking away the right of trial by jury.

6. An officer discharging a public duty imposed by law, is not liable for inevitable injuries resulting from his act, not caused by his negligence.

This was an action of trespass, in which the plaintiffs in their declaration complained " that the defendant, on the 17th day of December, 1835, at New York, to wit, at Newark, in the county of Essex, with force and arms, &c., did blow up by gunpowder, burn and destroy divers goods, wares and merchandizes of the said plaintiffs, to wit : 800 cases prints ; 70,000 pieces prints ; 50 cases drillings ; 1000 pieces drillings, and a large quantity of prints, drillings, and other dry goods, wares, and merchandizes of great value, to wit, of the value of two hundred thousand dollars, there then being at New York, to wit : at Newark aforesaid, whereby the said goods, wares and merchandizes, being of the value aforesaid, then and there became and were wholly lost to the said plaintiffs."

The defendant in justification pleaded the following plea :

And the said defendant, by B. W. his attorney, comes and defends the force and injury, when, &c.   And as to blowing up by gunpowder, burning and destroying the said 800 cases prints, &c., and other goods, &c., in the said declaration mentioned, says, that the said plaintiffs their action aforesaid, ought not to have and maintain against him, the said defendant, because he says, that at the time of the committing the said supposed tres-

passes in the said plaintiff's declaration mentioned by him, the said defendant, to wit, on the 17th day of December, in the year 1835, the citizens of the city of New York, in the state of New York, were, and for a long time previous thereto, to wit : from the year 1686, had been a body politic and corporate, by the name and style of " The Mayor, Aldermen and Commonalty of the city of New York," and from thence hitherto have continued and remained, and still continue and remain such body politic and corporate as aforesaid, by the name and style aforesaid.

And the said defendant further says, that heretofore, to wit : on the 7th day of April, in the year 1830, the people of the State of New York, represented in Senate and Assembly, did pass a public act, entitled, " An Act to amend the Charter of the City of New York," which said act was afterwards, to wit : on the day and year last aforesaid, signed and approved, to wit : by William L. Marcy, the then Governor of the State of New York, duly elected, qualified, and acting as such Governor.

And the said defendant further says, that the aforesaid act, among other things, provided as follows, viz : " The annual election for charter officers shall commence on the second Tuesday in April, and the officers elected shall be sworn into office on the second Tuesday in May thereafter." " The first election for charter officers after the passage of this law shall take place on the second Tuesday in April, 1831." And the said defendant further says, that certain officers in and for said city, to wit : a Mayor and Aldermen, were provided for, by, to wit : three several charters granted to said city, heretofore, to wit : one by Thomas Dongan, then being Lieutenant-Governor and Vice-Admiral of said city of New York, and its dependencies, under and by the authority of James the Second, then King of England, Scotland, and Ireland, to wit : on the 22d day of April, in the year 1686, in which said Charter, so as aforesaid made, it was, among other things, by the authority of the said King granted, " that for the better government of the said city, liberties, and precincts thereof, there shall be forever hereafter within the said city, a Mayor and six Aldermen and six Assistants ; " from the making of which said Charter so as aforesaid, up to the time of the commencement of this suit, the aforesaid grant

has remained in full force and effect, and in no wise abrogated or annulled ; during all which time there have been in said city certain charter officers, called Mayor and Aldermen.

And the said defendant further says, that under and by virtue of the aforesaid act of the Legislature, so as aforesaid passed on the day and year aforesaid, afterwards, to wit : on the second Tuesday of April, in the year 1836, a Mayor, being a " charter officer," and divers, to wit : sixteen Aldermen, being " charter officers," were elected by the qualified electors of the said city, for the term of one year from and after the second Tuesday of May thereafter. And afterwards, to wit : at an election held in said city for Mayor and Aldermen and other officers, to wit : on the second Tuesday of April, in the year 1835 ; the said act still being in full force and unrepealed, the said defendant received a majority of the votes given of the qualified voters of the said city of New York, over any other person, and was duly elected Mayor of said city for the term of one year from and after the second Tuesday of May, then next ensuing, to wit : until the second Tuesday of May, in the year 1836. And the said defendant was sworn into his said office of Mayor, and entered upon the duties thereof, to wit : on the said second Tuesday of May, in the year 1835, and continued in such office, and performed the duties thereof for and during the aforesaid term for which he was elected, during all which time he continued to be and was the Mayor of said city.

And the said defendant further says, that heretofore, to wit : on the day and year aforesaid, ône E. T. a citizen of said city, then residing in a certain portion thereof, called and known as the second ward, received a majority of all the votes given in said ward by the qualified electors thereof for Alderman thereof, at an election then held in said city for Mayor and Aldermen, and was duly elected Alderman thereof for the term of one year from the second Tuesday of May next ensuing ; and afterwards, to wit : on the second Tuesday of May in the year 1835, aforesaid, he the said E. T. was sworn into office as Alderman in and of the said city, from the second ward of and in said city, and afterwards, to wit : on the day and year last aforesaid, he the said E. T. entered upon the duties of his said office, and

American Print Works v. Lawrence.

exercised and continued to exercise the same for and during the full term of one year thereafter, to wit: to the second Tuesday of May in the year 1836, during all which time he continued to be and was such Alderman as aforesaid of and from the second ward of and in said city.

And the said defendant further says, that heretofore, to wit, on the said second Tuesday of April, in the year 1835, one E. B. a citizen of said city, residing in a certain portion thereof called and known as the third ward, received a majority of all the votes given by the qualified voters thereof, at an election then and there held for Mayor and Aldermen of said city, for Alderman of said ward, and was duly elected such Alderman as aforesaid. And afterwards, to wit: on the second Tuesday of May thereafter, he the said E. B. was sworn into office as Alderman from the ward last aforesaid, of said city. And afterwards, to wit: on the day and year last aforesaid, he the said E. B. entered upon the duties of his said office, and exercised and continued to exercise the same for and during the full term of one year thereafter, to wit: to the second Tuesday of May in the year 1836, during all which time he continued to be and was an Alderman in and of the city aforesaid.

And the said defendant further says, that heretofore, to wit: on the ninth day of April in the year 1813, the people of the state of New York, represented in Senate and Assembly, did pass an act entitled, "An Act to reduce several Laws relating particularly to the city of New York, into one Act," in which the said act it was among other things provided and enacted as follows, viz: "That when any building or buildings in the city of New York shall be on fire, it shall be lawful for the Mayor, or in his absence the Recorder of the city, with the consent and concurrence of any two of the Aldermen thereof, or for any three of the Aldermen, to direct and order the same, or any other building which they may deem hazardous and likely to take fire, or to convey the fire to other buildings, to be pulled down or destroyed." And afterwards, to wit: on the day of said                    in the last year aforesaid, the act aforesaid so as aforesaid passed, was presented to the Council in said state duly elected, chosen and appointed to revise and con-

sider all bills which were passed by the Senate and Assembly of the State of New York aforesaid, which said Council was under and by virtue of the Constitution of the said state charged with the revision and consideration of all laws passed as aforesaid—and the act aforesaid passed as aforesaid, was by the said Council considered and approved, to wit, on the day and year last aforesaid, and then and there became and was a law. And the said defendant further says, that the provisions of the aforesaid act as above stated, from thence hitherto has remained and still remains in full force and effect and unrepealed.

And the said defendant further says, that heretofore, to wit, on the seventeenth day of December, in the year 1835, at the city and county aforesaid, certain buildings were on fire, to wit: numbers forty-four and forty-six in a street called Exchange Place in the aforesaid city of New York. And the defendant further says, that near to the said buildings, so as aforesaid on fire at the place and on the day and year aforesaid, was a certain other building commonly called a store. And the said defendant further says, that he the said defendant then being Mayor as aforesaid, and the said E. T. and E. B. then still being Aldermen of and in the said city as aforesaid, were present when the buildings aforesaid were on fire as aforesaid, and then and there the aforesaid building commonly called a store, was by the said defendant, then still being Mayor of the said city of N. Y. and said E. T. and E. B. then still being Aldermen of and in the said city, and by each of them deemed and believed hazardous and likely to take fire; and he the said defendant, did with the full consent and concurrence and approbation of each and both the aforesaid Aldermen, cause and procure the aforesaid building, commonly called a store, to be blown up and destroyed. And the said defendant says, that the said 800 cases prints, and other goods, &c. of the said plaintiffs, as in said declaration mentioned, were in the aforesaid building, commonly called a store, at the time when he, the said defendant, as Mayor as aforesaid, with the consent, approbation, and concurrence of each and both the aforesaid Aldermen, of, in and for the city aforesaid, caused the said building to be blown up with gunpowder and destroyed, to wit: on the day and year afore-

said, at the City, County, and State of New York, and within the jurisdiction of the State of New York, and for the reason aforesaid, the aforesaid goods, wares, and merchandises in said plaintiff's declaration mentioned, were blown up by gunpowder, burned up and destroyed by said defendant, as it was lawful for him to do as Mayor of the city of New York, as aforesaid; which are the same supposed trespasses in the introductory part of this plea mentioned.

And this he, the said defendant, is ready to verify; wherefore he prays judgment if the said plaintiffs ought to have and maintain their aforesaid action against him, the said defendant.

To this plea the plaintiffs filed a general demurrer, and the defendant joined in demurrer.

The case was argued upon the demurrer at October Term, 1847, before the CHIEF JUSTICE, and RANDOLPH and WHITEHEAD, JJ.

*W. W. Van Wagenen,* for plaintiffs, and

*Willis Hall,* and *J. L. White,* for defendants.

*Van Wagenen,* for plaintiffs.

First. The statute as set forth in the defendant's plea, if it contemplated a power to destroy personal property not belonging to parties having an estate or interest in the building, would be repugnant to the constitution of the State of New York, and void, because no indemnity is provided for such property.

Second. The statute which should purport to authorize the destruction of a building merely because it might be likely to take fire, would not be constitutional, even upon full indemnity to the sufferer—for it would not authorize a taking or sacrifice of property for the public use—and the defendant simply avers the building to have been believed to be hazardous, and likely to take fire. He does not say that it was deemed to be likely to convey fire to other buildings.

Third. The Legislature, in fact, contemplated only the destruction of the building; and the authority granted by the

statute did not authorize the destruction of the plaintiff's property.

Fourth. The defendant does not in his plea aver such an execution of the power conferred by the statute as would even have been a justification for the destruction of the buildings; nor does he aver that the plaintiff's property was destroyed under the authority of the statute. That plea is simply an admission of the tort, with an explanation of the circumstances.

*Hall,* and *White,* for defendant.

First. It is a "universal principle" of the common law, that in regard to the merits and rights involved in actions, the law of the place where they originated, is to govern. But the forms of the remedies, according to the law of the place where the action is instituted, as well as the order of judicial proceedings.

Second. The acts of a person done in the place of his domicil in regard to property situated therein, *are to be judged of by the laws of that place,* and will not be permitted to have any other legal effect elsewhere than they have in that place.

If he has a capacity to do an act there, the act when done will be governed by the same laws, wherever contested.

Third. The obligatory force of the laws of New Jersey cannot extend beyond the jurisdiction of the State *to give a right.*

Fourth. By the common law, the Mayor, or any private citizen had authority to pull down the building in question, and thereby destroy the goods to prevent the spreading of the conflagration : and whether the act was necessary for such purpose or not, is to be settled by testimony.

But in this case, the Mayor and two Aldermen were by the law of New York the sole judges of the necessity. This privilege rests upon the doctrine that private mischief is to be endured rather than public inconvenience.

Fifth. The act does not require the Mayor to remove goods in the building to be blown up. His duty is to "blow up" the store, and if goods are destroyed thereby, such a destruction is a mere consequence of the performance of a public duty, which the owner of the goods must suffer.

Sixth. The defendant (as is admitted by the demurrer), was

a public officer, and acted within the scope of his authority. No action, therefore, lies against him by the law of the jurisdiction where the act complained. of was committed; nor has the plaintiff a cause of action against any other party because of the act. The statute has omitted to give it a remedy, and the common law provides none.

Seventh. If this be regarded as a case falling within the provision of the constitution which forbids taking private property for public use without just compensation (which it is not.) The plaintiff must look to the Legislature for relief, as it has provided no mode of recovery for the loss.

Eighth. This is not a case of taking private property for *public use.* There are two principles upon which private property may be taken. 1st, for *public use,* which is, where property is taken for the general use and benefit of the people of the whole State in their aggregate character by the government, or for such of them as may have occasion for it. 2d, by private individuals in cases of peril, to save life, &c.

GREEN, C. J. This is one of thirty-three actions, commenced by different plaintiffs for damages sustained by the loss of property destroyed on the 17th of December, 1835, by order of the Mayor and two Aldermen of the city of New York, to arrest the spread of a conflagration in that city. The plaintiffs complain that the defendant, on the 17th day of December, 1835, at the city of New York, blew up by gunpowder, burnt and destroyed divers goods, wares, and merchandize of the plaintiffs, of the value of $200,000.

The defendant pleads in justification, that by a statute of the state of New York, passed on the 9th day of April, 1813, it was among other things enacted as follows, to wit: " That when any building or buildings in the city of New-York shall be on fire, it shall be lawful for the Mayor, or in his absence the Recorder of the city, with the consent and concurrence of any two of the Aldermen thereof, or for any three of the Aldermen, to direct and order the same, or any other building which they may deem hazardous, and likely to take fire, or to convey the fire to other buildings, to be pulled down and destroyed."

" That on the 17th of December, 1835, the aforesaid provision of the said act remaining in full force and unrepealed, certain building, to wit: numbers 44 and 46 Exchange Place in the city of New York, were on fire. That the defendant then being Mayor of the said city of New York, and Edward Taylor and Egbert Benson then being two of the Aldermen of said city, were present at the fire. That near to the said buildings so on fire, was a store, which was by the said Mayor and Aldermen, and by each of them, deemed and believed hazardous, and likely to take fire, and that the defendant, with the full consent, concurrence, and approbation of the said Alderman, caused and procured the said store to be blown up and destroyed. That the goods of the plaintiffs were in the said building at the time it was so blown up and destroyed, and for the reason aforesaid, the aforesaid goods, wares, and merchandize in the plaintiff's declaration mentioned, were blown up by gunpowder, burned up and destroyed by the defendant, as it was lawful for him to do," &c.

To this plea there is a general demurrer, and joinder in demurrer.

The only question presented by the pleadings, and discussed upon the argument of this cause is, whether the statute of the state of New York, pleaded by the defendant, is a sufficient justification of the alleged trespass.

It is insisted on behalf of the plaintiffs, that no statute can be constitutionally passed which authorizes the destruction of private property without compensation. That private property cannot be taken by virtue of an act of the Legislature, without indemnity. That such taking is a violation of that clause of the constitution, which provides that private property shall not be taken for public use without just compensation. It is conceded, that while the statute has made provision for indemnifying all persons having an interest in the buildings destroyed, in pursuance of the act, the owners of personal property destroyed by the same instrumentality having no interest in the building, are left without compensation. Nor is it denied that the *destruction* of private property for public use is a *taking* of it within the meaning of the constitution.

If the statute authorizes the destruction of private property for public use within the meaning of the constitutional provision, then clearly the act is unconstitutional, and cannot avail the defendant as a justification.

But, is property, destroyed to arrest the progress of a conflagration, taken *for public use*, within the constitutional sense of the term ?

The right to take private property for public use is an attribute of sovereignty—it is inseparable from the sovereign power. It is the right of eminent domain, of sovereign or transcendental property in the goods of the subject. It is a right founded on the nature and end of sovereignty, growing out of the nature of the social compact, by virtue of which every member of society holds his property upon condition that it is subject to be taken for the use of the State whenever the public good requires it. It is justified on the ground of state necessity. It is founded on the same principle as the right of raising taxes and subsidies for the support of government and the right of regulating the use of private property by sumptuary laws. 2 *Burlem* 145, c. 5 § 6 ; *Ib*. 159, c. 5 § 24—29 ; 12 *Coke* 13, *Case of the Prerogative*, &c.

But the right to destroy property to prevent the spread of a conflagration rests upon other and very different grounds. It appertains to individuals, not to the State. It has no necessary connection with, or dependence upon the sovereign power. It is a natural right existing independently of civil government.

It is both anterior and superior to the rights derived from the social compact. It springs not from any right of property claimed or exercised by the agent of destruction in the property destroyed, but from the law of necessity. The principle as it is usually found stated in the books is, that " if a house in a street be on fire, the adjoining houses may be pulled down to save the city." But this is obviously intended as an example of the principle, rather than as a precise definition of its limits. The principle applies as well to personal as to real estate ; to goods as to houses ; to life as to property—in solitude as in a crowded city ; in a state of nature as in civil society. It is referred by moralists and by jurists to the same great principle, which justi-

fies the exclusive appropriation of a plank in a shipwreck, though the life of another be sacrificed ; with the throwing overboard of goods in a tempest for the safety of the vessel ; with the taking of food to satisfy the instant demands of hunger ; with trespassing upon the land of another to escape death from an enemy. It rests upon the maxim, " *Necessitas induciz privilegium quoad jura privata.*" *Bacon's Elem. Reg.* 5 ; *Noys' Maxims, Max.* 25 (*Herring's Ed.* p. 30) ; *Puffen, lib.* 2, c. 6, § 8 ; *Witherspoon's Mor. Phil.* 136, § 16 ; 2 *Kent's Com.* (2d *Ed.*) § 338 ; *Stone et al.* v. *The Mayor et al.* 25 *Wend.* 173. And the common law adopts the principle of the natural law, and places the justification of an act otherwise tortious, precisely upon the same ground of necessity.

It must be so pleaded in justification. Hence the plea in such case is not the public good, the eminent domain, the sovereign power, but necessity. *Com. Dig. Pl.* 3, *M.* 30 ; 3 *Chit.* 1118.

It is true that by many writers of high authority the ground of justification of an act done for the public good, and of an act committed through necessity, are not accurately distinguished. They are both spoken of as grounded on necessity, and they doubtless are so. But the one is a *state,* the other an *individual* necessity, though ofttimes resulting in a public or general good. The one is a civil, the other a natural right. The one is founded on property and is an exercise of sovereignty. The other has no connexion with, or dependence upon, the one or the other.

Nor can property destroyed to prevent the spread of a conflagration, be said in any appropriate sense to be destroyed for the public good. It may be destroyed for the benefit of one, of a few, or of many ; but it is not destroyed for the benefit of the State ; nor is it taken in aid of any of these public objects, which it is the peculiar and appropriate duty of every State to foster and promote. I am of opinion, therefore, that the destruction of buildings to prevent the spread of a conflagration, is not the taking of property for public use within the meaning of the constitution.

Nor is the principle altered by the fact that the destruction in

the present instance was committed under Legislative sanction. The right of destruction existed prior to the enactment. The statute created no new power. It conferred no new right. It merely converted a right of necessity into a legal right. It regulated the mode in which a previously existing power should be exercised.

The statute does not authorize the destruction. It could not do so. It would be an attempt to take private property for private use. Nor did the statute deprive any citizen of his natural right to destroy buildings to prevent the spread of a fire in a case of necessity. Every citizen may, notwithstanding the statute, still exercise that right at the peril of being held responsible for an error of judgment as to the existence of the necessity. But the statute vested the power of judging of the existence of the necessity in the discretion of certain officers designated by the statute, and made their judgment conclusive of the existence of that necessity. In so doing, I do not perceive that the Legislature acted unconstitutionally. The policy of the statute, and whether upon principles of equity, provision should have been made to indemnify those whose property has been sacrificed for the safety of the city, are points upon which a difference of opinion may exist, but with which this court has no concern.

It is further objected that the act is unconstitutional, upon the ground that the party whose property is injured, is deprived of the right of trial by jury. The objection is not well founded.

The party is not, in point of fact, deprived of a trial by jury. The evidence necessary to sustain the defence, is changed. Even if the party were deprived of a trial by jury, the statute is not therefore necessarily unconstitutional. *Bonaparte* v. *The Camden & Amboy R. R. Co. Baldw.* 220 ; *Scudder* v. *The Trenton Del. Falls Co. Saxton* 687 ; *Beekman* v. *The Sar. and Sch. R. R. Co.* 3 *Paige* 75.

The only remaining ground of objection to the validity of the plea is, that the statute on which the defendant relies for justification, does not in terms authorize the destruction of personal property, but only of buildings deemed hazardous. That the Legislature have left the right to destroy personal property as it

stood at common law, undisturbed by the provisions of the stat-
ute.   It may be suggested, moreover, that the necessity of de-
stroying the goods, did not result necessarily from the necessity
of destroying the building.   That though the destruction of the
building may have been necessary, yet by a brief delay, the
goods of the plaintiffs might have been saved.   That the justi-
fication, therefore, may be perfect as to the building, but fail as
to the goods.

The act, however, which constitutes the Mayor and Alder-
men judges of the necessity of destroying the building, must
of consequence make them judges also of the time at which the
act of destruction becomes necessary.   It must be assumed,
therefore, upon the pleadings, that the building was destroyed
at the time, and in the manner, demanded by the imminency of
the danger.   It must further be assumed, that the destruction
.of the building necessarily involved the destruction of the goods.

The defendant, then, in this action, is attempted to be made
responsible for the consequences of an act which, by the statute,
he was especially authorized to perform, for the performance
of a duty which, as a public officer, he was bound to execute.
He was acting for no private emolument, but in the discharge
of a public duty.   The act was not done for his individual ben-
efit.   He derived from it no advantage not shared in common
with his fellow-citizens.   In the performance of his duty he
acted, it must be assumed, with due skill and caution.   There
is no allegation or pretence to the contrary.   Under these cir-
cumstances I deem it clear that the defendant is not liable for
the destruction of the plaintiff's goods, or for any other inevita-
ble consequence of the destruction of a building.

It is a well settled principle, that where a person in discharge
of a public duty, not acting for private emolument, unwittingly
injures another in the performance of the act while acting with
due skill and caution, he is not answerable for damages.   *The
Governor, &c.* v. *Meredith,* 4 *T. R.* 794 ; *Sutton* v. *Clark,* 6
*Taunt.* 29 ; *Am. Law. Mag.* (*April,* 1843) *p.* 52 ; *Sinnickson* v.
*Johnson,* 2 *Harr.* 129, 150 ; *Ten Eyck,* v. *The Del. & Rar.
Canal Co.* 3 *Harr.* 200.   The demurrer must be overruled.

WHITEHEAD, J. concurred.

RANDOLPH, J.   In December, 1835, occurred in the city of New York, one of the most extensive fires ever known in this country, and property, both real and personal, to the value of many millions of dollars was destroyed, much the larger portion being consumed by the flames, but a very considerable part, in the efforts made by the Mayor and other officers, to prevent the spread of the conflagration, by pulling down, or blowing up with gunpowder such buildings as were deemed hazardous and likely to take fire, and be the medium of spreading the devouring element.   The statute of New York, which authorized the Mayor to act in the emergency, also authorized " any person interested in such building so pulled down or destroyed, to make application to the proper tribunal, and have an assessment in full satisfaction of all demands, of such persons respectively, by reason of the pulling down or destroying such buildings," which assessment, together with the expenses of the proceedings, the corporation are required to pay.   Various controversies have arisen in the courts of New York, under this statute, and growing out of the destruction of property at the time of the fire, the result of which seems to be that the corporation are liable for the buildings destroyed, and for the amount of property therein belonging to the owner or other person having an interest in the building, but for goods or other property not belonging to persons " interested in such building," the corporation is not liable, unless it may be to the amount of the lien of the owner or lessee of the building.   See *the Mayor of New York* v. *Lord,* 17 *Wend.* 285 ; *S. C. in Error,* 18 *Wend.* 126.   *The Mayor, &c. of New York* v. *Stone & al.* 20 *Wend.* 138 ; *S. C. in Error,* 25 *Wend.* 157, and also the proceedings in the various courts of the state, of the subsequent case of *Lawrence & al.* v. *The Mayor, &c. of New York.*   In the latter case, the court decide more particularly, that the power vested by the Legislature in the Mayor and Aldermen of New York to destroy property in order to prevent the spread of a conflagration, was beyond and above that of the corporation, that they were not their agents, and so the corporation, were not liable for their acts in the premises, or for the destruction of property by them be-

yond the liabilities imposed by the statute, which did not embrace the goods or property of persons not interested in, or occupying the building destroyed.

All efforts to recover against the corporation, by the owners of goods destroyed having failed, the present suits are brought against the defendant individually, and process having been served on him in this state, we are obliged to take cognizance of the matter, though more appropriately belonging to the tribunals of another State. The demurrer to the defendant's plea of justification as Mayor, acting under the authority of the statutes of New York, puts in issue the whole matter. The 81st section of the statute of New York, respecting the city of New York, directs, " that when any buildings in the city of New York shall be on fire, it shall be lawful for the Mayor, or in his absence the Recorder of the city, with the consent and concurrence of any two of the Aldermen thereof, or for any three of the Aldermen, to direct and order the same, or any other building which they may deem hazardous and likely to take fire, or to convey the fire to other buildings, to be pulled down or destroyed."

The power hereby granted is ample ; it is fully set forth in the plea, and confessed by the demurrer ; if, therefore, the statute is of any validity, it must afford a complete justification, not only for the destruction of the building, but of its contents, the goods set forth in the declaration ; for it would be worse than idle for the Legislature to authorize the destruction of a building in an emergency like that under consideration ; but at the same time to hold the individual liable for the destruction of whatever was within the house, and which from the very necessity of the case could not be removed without the removal itself defeating the very object of the law, as well as being the means of destroying the property. It would be like authorizing the taking of the pound of flesh, but not the shedding one drop of blood. *Lex non cogit ad impossibilia. Bacon's Maxims*, 116.

Nor can any written order be necessary ; the statute does not require it, and it would be strange if it did. It authorizes the Mayor, with the assent of two Aldermen, to act on an extreme

emergency, requiring prompt if not instant execution, in order to render the action of any avail, affording neither time nor opportunity for formal deliberation or written orders, entirely unlike the cases of the abatement of nuisances by order of the corporation referred to in 15 *Wend.* 262 and 397, where the court determined that the proceedings of the board of health in the matter, could not be proved by parol, unwritten evidence.

Another objection taken is, that the act refers the question of necessity wholly to the judgment of the Mayor and two Aldermen, and does not leave it open for the determination of a jury. I do not know what public officer would ever be willing to perform so responsible a duty as that required here, if he must be answerable in damages to the whole amount of property destroyed for a mere act of misjudgment, and that to be determined by a jury on the evidence or opinion of the bystanders, grown much wiser after, than they were before, the transaction. It is correctly made the duty of those required to act, to judge of the time and necessity for the action, the same, of course, as in all other cases of the performance of public duty by an officer or agent, rendering him liable for any wanton exercise of authority. In matters of this kind, and of assessment, no jury is necessary under the constitution, the case not being a suit or action at common law, or in which a trial by jury " has been heretofore used," as expressed in the constitution.

We come now to the point mainly relied on in this case, viz : that by the constitution of New York, as well as that of the United States, (a) private property is not to be taken for public use without just compensation, and that if the construction of the statute now under consideration be such as to exclude from the compensatory part all goods destroyed not belonging to the owners or occupants of the building destroyed, then the act as to those goods is unconstitutional. Waiving any consideration of the term " public use," and of its applicability to a case wherein the state or its citizens generally have not, and can have no real interest—for which see opinions of *Oakley* and

---

(a) It is well settled, that this and the other restraining clauses in the Federal Constitution not *expressly* applied to the States, restrain only the powers of the Federal Government.

*Bronson, JJ.* in *Lawrence* v. *The Mayor &c. of New York,* and also whether an act appropriating private property for public use, can in any respect be unconstitutional, because the compensation provided is not as broad as the act itself, there being in it no regulation as to the compensation—for which see opinion of Savage, C. J., in *Wheelock* v. *Young & Pratt,* 4 *Wend.* 647, I come at once to the real point in the case, and that is, that in my opinion here is no appropriating or taking of private property for public use. This is very unlike the cases where the State, by virtue of its right of eminent domain, resumes the property of a citizen, and appropriates it to the use of the public; or in prosecuting some great public work, such as a canal or railroad, even in its sovereign capacity, or through the power delegated to an incorporated company, finds it necessary not merely to take the soil and property of the citizen, but to destroy his mill seat, divest his water course, or commit other irreparable damage to private rights in order to effect the great object in view. In such cases not only must private rights yield to the interest and wishes of the State, but it is a positive evil suffered by an individual for the supposed gain of the whole community, at the will of that community, and upon every principle of justice the public should make compensation, and this has accordingly been provided for by the Constitution of the United States, and of most of the State governments. But where a ship is in danger of foundering, and a part of the cargo is thrown overboard to save the residue, or where a house in the midst of the city is infected with a dangerous disease, and is pulled down, and the place purified to prevent the spread of contagion, or where a fire occurs in a city, and to stay its desolating ravages it is necessary to pull down or destroy the adjoining buildings—in each of these cases the individual suffers; his property is destroyed in order that other property in the vicinity may be saved, and he may, or may not have redress under the common or statute law, but he will have no right to resort to the State, under the idea that it was taken for the public use. This was a case where inevitable danger arose to a community of goods or persons, and the law of necessity would authorize the use or the destruction of the first property that would avert

American Print Works v. Lawrence.

that danger, no matter whose or what it was ; the whole community were in the same situation ; all had equal rights, and were subject to equal liabilities ; and if A's property was destroyed, and B's saved, it was merely the misfortune of the one and the good fortune of the other, which strict equity might require to be equalized in that immediate community ; but if the law afforded no redress, the constitution could not. The statute of New York has given relief to certain classes of sufferers, requiring the corporation to make compensation ; but the class to which the plaintiffs in their suits belong, the statute does not extend. In those cases, it was the bounty of the law that provided a remedy where none before existed : to these cases that bounty has not been extended. Whether the reasons for the distinction are satisfactory, or otherwise, is not for us to determine ; it is sufficient for us to know that the difference exists.

Some confusion has arisen in the argument of these cases, in supposing that the statute conferred on the defendant a new power which did not before exist, but this is not so ; the statute merely affirmed the principles of the common law, and in order to give the principle of necessity the more promptness and efficiency of execution to answer the emergency of the case, it directed the Mayor and Aldermen to put it into operation. What the defendant did under the statute, he might have done without it, relying on the common law for justification ; this was determined in this State by the late Chief Justice in an interesting case tried before him some years since at the Essex Circuit, wherein damages were sought to be recovered against Capt. Williamson for blowing up a building in the city of Newark to prevent the spread of fire, under circumstances similar to the case now under consideration. The principle is also fully sustained in *Mouse's case*, 12 *Co. R.* 63 ; 15 *Viner's Abridgt. tit. necessity A*, § 8 ; *Maleverer* v. *Spinke*, 1 *Dyer* 360 ; *Jenkins* 207 case ·38 ; *Puffendorf Lib.* 2 *c.* 6 ; *Republic* v. *Sparhawk*, 1 *Dall* 357.

The defendant's plea then being fully sustained by the statute, and that being in accordance with the principles of the common law, and as there was no taking of private property for public use within the meaning of the constitution, I am

clearly of opinion that the demurrer should be overruled, and judgment be rendered for the defendant.

Demurrer overruled. (a)

a) The decision of this court in this case was reversed in the Court of Errors, at the Term of October, 1848.

SEE *Hale* v. *Lawrence,* 1 *Zab.* 714; *Same Case,* 3 *Zab.* 9. CITED *in Trenton Water Power* v. *Raff,* 7 *Vr.* 343.