DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW-JERSEY,

AT NOVEMBER TERM, 1851.

---

### THE AMERICAN PRINT WORKS v. LAWRENCE.
### HALE v. LAWRENCE.

1. In an action of trespass for the destruction of goods, destroyed by the blowing up the building in which they were stored to prevent the spread of a conflagration in a city, the common law plea of necessity is a good plea in justification; and it is not necessary to aver in it that the defendant was a resident of, or owner of property in the city, or that his own property was in danger.

2. Where a statute authorizing the destruction of property is constitutional as to part, and unconstitutional as to the residue, a plea justifying the destruction of property may allege, by way of inducement, so much of the statute as is constitutional, and the lawful acts done under it, and then conclude with the plea of necessity as to other acts not justified by the statute, particularly where the defendant was a public officer acting under the statute.

3. The decisions of state courts in construing the statutes of their own state should be binding upon courts of other states.

4. The statute of New York authorizing the destruction of property in conflagrations is not unconstitutional; it is the mere regulation of the right of necessity and self-preservation, and not an authority to take private property for public use under the right of eminent domain. (RANDOLPH, J.)

---

These cases were brought up from the Supreme Court upon judgments on the demurrers filed by the plaintiffs (who were

590

plaintiffs below) to the replications of the defendant. The pleadings in both suits, and the points arising upon them, were precisely the same. The pleadings are set forth at length in the report of the same cases in the Supreme Court (*ante*, *p*. 9,) where judgment was for the defendant.

The error assigned was, that, upon those pleadings, judgment ought to have been given for the plaintiffs, and not for the defendant.

The case was argued by *W. W. Van Wagenen* (of New York) for plaintiffs in error, and *Davies* (of New York) and *B. Williamson*, for defendants in error.

*W. W. Wagenen*, for plaintiffs in error, referred to the history of this case. See *The Mayor*, &c., v. *Lord*, 17 *Wend*. 285 ; *S. C. in Error*, 18 *Ib*. 126 ; *The Mayor*, &c., v. *Stone*, 20 *Ib*. 139 ; *S. C. in Error*, 25 *Ib*. 157 ; *Russel* v. *The Mayor*, &c., 2 *Denio* 461.

I. The action is in trespass. The justification is under the statute, and is identical in substance with that already overruled in this court. See 1 *Zab*. 248 ; *S. C. in Error* 714. The pleas set up an implied power to destroy the goods or power to destroy the building. Now the first decision held that such power is void, even if expressly given, unless compensation is provided.

1. The power given by the statute is limited to the building, and was held, on the prior review, to arise out of a grant of the eminent domain. This power rests on state necessity, and can only be constitutionally delegated upon the condition of making compensation to the sufferer. It is to be interpreted strictly and as a grant. Unless indemnity is provided, unconstitutional and void. How can that be valid on an implied grant which would not be good on an express grant without compensation? *Vattel* 111 ; 2 *Story on the Constitution*, § 1790 ; 4 *Wheat*. 620 ; 4 *Hill* 99 ; 4 *Ib*. 140 ; 7 *Mass*. 393 ; 18 *Wend*. 1 ; 12 *Mass*. 468 ; 2 *John Ch. R*. 162 ; *Scales* v. *Pickering*, 1 *Mo. & Payne* 195 ; 2 *Dal*. 304, 318 ; 14 *Conn*. 146 ; 6 *Bin*. 471 ; 20 *John*. 103 ; *Ib*. 735.

Public necessity, by a .change of terms merely, is the doc-

trine of eminent domain. State necessity is broader than absolute necessity.

Grantees of the eminent domain have no judicial office in any way. An exercise of discretion under a limited power is not therefore a judicial duty. No officer of limited powers but is liable if he go beyond the scope of his power.

We have not brought the constitution of New York before the court. What are the elements of fundamental and constitutional law, is before the court in the decisions of her courts. They are principles which belong to the general law of every state in the Union.

2. The class of cases upon which the Supreme Court improperly placed itself, in the opinion delivered, are those where a party has an unlimited right and control over property, and where he is only limited and controlled by the obligation, *sic utere tuo ut alienum non lœdas.* He is not responsible, when if his acts be upon his own property, and exercised with due caution for consequential injuries which may fall on his neighbor.

The cases cited on the other side are where the grade of streets belonging to the public was altered, but no act being done on the plaintiff's property, the damage was indirect and consequential. See 4 *T. R.* 794; 6 *Taunt.* 29; 3 *Wils.* 461; 1 *Pick.* 418; 17 *John.* 92.

3. The destruction of the plaintiff's property was not an *indirect nor consequential* result of the destruction of the building, nor is it so pleaded. 2 *Harr.* 200. The goods were voluntarily and directly blown up by gunpowder by the defendant. The declaration is in trespass, and it is so charged.

II. The pleas are bad in substance, regarded as pleas of common law necessity. There is no authority at common law to destroy one man's property *not on fire* to save that of another *without compensation. Puffendorf* (*Lib.* 2, *ch.* 6, § 8,) cited in succeeding authorities, expressly recognises the right of compensation. See 1 *Dyer* 36 *a ;* 12 *C.* 63 ; 15 *Vin.* 535; 4 *T. R.* 794; 1 *Dal.* 357 ; 17 *Wend.* 285. But in no one of the cases was the point directly before the court.

But the right, if it exists at all, is a personal one, to be ex-

ercised only by the party whose property is in danger, upon his authority and at his peril.

III. The replications are a sufficient answer to the pleas. If the pleas can be construed as setting up a necessity for the destruction of the plaintiff's goods, then the replications take issue on this point. So much of the replications as allege that the plaintiffs had no interest, &c., is mere surplusage. But we regard the pleas as bad in substance, and insist that the plaintiffs are therefore entitled to judgment.

*Davies* and *B. Williamson*, contra.

All the questions raised here have in effect been decided in the state of New York. Cited and commented on the cases arising out of the great fire of 1835, already named. The law of the state of New York authorizing the destruction of buildings in the city of New York, in order to prevent the spread of fires, has there been held to be a valid and constitutional act. This court, on a previous view, has held that the statute was a regulation of the right of eminent domain. Not denying that the act conveyed power in regard to buildings, yet the court held, that so far as it attempted to confer power over personal property for which it provided no compensation, it was unconstitutional and void, and afforded no justification. 1 *Zab.* 715.

The case is an authority only for the point actually decided. The plea overruled was a plea of the statute only, but the decision did not negate, at least it did not necessarily negate, many of the views held in the court below. It is not denied that the statute is valid and constitutional, so far as it provides compensation.

The first plea now in question sets out that the defendant was an officer acting under a valid and constitutional act, which required him, under certain circumstances, to destroy buildings in order to prevent the spread of a conflagration, and it avers that the goods destroyed were in a building so situated, and that they could not be removed or saved.

The second plea is the plea of necessity at common law. A person acting in discharge of a public duty, if he unwittingly

or unavoidably injures another 'in the performance of the act, while acting with due skill and caution, is not answerable in damages.   Green, C. J., 1 *Zab.* 260 ; 4 *T. R.* 794 ; 6 *Taunt.* 29 ; 2 *Harr.* 150 ; 13 *Maine* 250 ; 2 *Harr.* 200 ; 1 *Denio* 595 (598); 2 *Ib.* 461 ; Bronson, C. J., in *Executors of Radcliff* v. *Mayor, &c., of Brooklyn,* 4 *Comstock's R.* 195.

The first plea places the justification on this precise ground. A public duty in case of fire was imposed ; the duty was exercised ; the injury to the plaintiff was unavoidable and a necessary consequence.   The officer is protected under this principle.

It is a mistake to suppose that because the legislature has neglected to make compensation, therefore the officer must make it.   18 *Wend.* 129 ; 25 *Ib.* 177.

The constitution of the United States has no application to the legislation of the states, unless expressly applied.   7 *Peters* 243.   If the constitution of New York is relied on, (which has not been pleaded, and this court cannot judicially notice,) then, at least, the adjudications of the courts of that state ought to be followed on questions arising out of their own constitution and laws.   They have decided that the act is not unconstitutional, and that an officer is not liable for consequential injuries arising out of the proper performance of a public duty.

As to the second special plea, the plea of necessity, it is entirely beyond the scope of the former decision of this court.

There is no authority which will restrict it to the case of an individual acting only for his own protection.   The authorities cited do not sustain such distinction.   12 *Co.* 13 ; 1 *Dyer* 36 ; 1 *Dal.* 357 ; *Noy's Max.* 32.

The replications are not good. They stand on different footing from the pleas, in regard to which all objections in matter of form have been waived by pleading over.   The replications, however, have been specially demurred to.

The plaintiff negatives a fact not set up in the plea, to wit, as to the plaintiff having any interest or estate in the buildings. 1 *Saund.* 312, *note* 4.

The replications set up new facts, and yet conclude to the country.

The replications are multifarious.

CARPENTER, J. These causes are now, for the second time, before this court. Upon a former occasion, they came up upon demurrer to a plea of the defendant, who set up, as a justification of the act charged to be a trespass, that it was done by him, as mayor of the city of New York, under the authority and in pursuance of a statute of the state of New York, by which certain duties were imposed upon him as such officer. He pleaded in justification, that the act was done by him in the performance of the duties imposed upon him by the statute, and by virtue of the authority so given, as he alleged it was lawful for him to do.

This plea of justification rested upon the statute, and the defence so set up was sustained by the Supreme Court of this state, upon the authority of decisions in the courts of New York, in a series of cases arising out of the very act here charged to be a trespass. But this court reversed the decision of the Supreme Court, and overruled the plea because it rested upon the statute alone, which the court held, so far as it attempted to confer any power over personal property for which it made no compensation, to be unconstitutional and void.

Dissenting from the view taken by the courts of New York, this court held that the statute was not a mere regulation of a pre-existing natural right, but a grant of a new power to take or destroy private property for public use or public safety; and taking this view of the statute, that it was constitutional only so far as it provided compensation for the property destroyed.

The judgment of this court, perhaps in strictness, went no farther, looking only at the point necessarily involved in the decision, though the opinion delivered may have assumed some other and additional principles.

By that decision, this court held that the statute of the state of New York to be so far unconstitutional, notwithstanding that the constitution of the state of New York was not before us by pleading, of which, therefore, we could not properly take judicial cognizance, and notwithstanding that the statute had there been sustained as valid in every respect in which it had been presented for consideration. I say, notwithstanding that it had been held by the courts of New York to be a constitu-

tional and valid law, it was here held to be unconstitutional and void, and to afford no justification to a public officer acting under its provisions and in strict obedience to its mandates. I have before expressed my earnest dissent from that decision, not because I would give a different construction to the statute, were its primary construction the proper subject of our consideration. As I then intimated, I should be disposed to treat a similar statute of this state, were any such to. be enacted, as a grant of power. But I could not unite in a decision placing a construction upon a statute of the state of New York different from that adopted by the courts of New York.

I could not hold the statute to be unconstitutional and void, when it had never been so declared by the courts of the state to which its interpretation primarily belonged, but on the other hand had been expressly held to be constitutional in a cause arising entirely within that state, and which I thought ought to be regulated strictly by the *lex loci*. Upon what authority or principle could we assume the exercise of such a power? It has been decided by the Supreme Court of the United States, that court refusing to declare an act of a state legislature void because of its conflict with the constitution of the state. *Jackson* v. *Lamphire*, 3 *Pet.* 280 ; *Watson et al.* v. *Mercer*, 8 *Pet.* 88, (109).

The question, whether a state law is constitutional or not, on the ground of repugnancy to a state constitution, is not cognizable by the Supreme Court of the United States. It is exclusively confined to the state courts, and obviously to the courts of the state by whom the act was passed, at any rate in regard to all causes of action arising within such state. Indeed, the Supreme Court of the United States (as I have already on a previous occasion remarked), in all controversies arising under the statutes of the respective states, conforms to the decisions of the courts of those states in regard to the construction of their own statutes, so far as they comport with the constitution of the United States. In cases depending upon laws of a particular state, it uniformly adopts the construction which the courts of the state have given to those laws. " This

course," says Chief Justice Marshall, " is founded on the principle, supposed to be universally recognized, that the judicial department of government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus, no court in the universe, which professed to be governed by principle, would, we presume, undertake to say that the courts of Great Britain or France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding. We receive the construction given by the courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction than to depart from the words of the statute." *Elmendorf* v. *Taylor*, 10 *Wheat.* 152. This doctrine, so forcibly and justly expressed and so important to the proper working of our system of associated state governments under different laws, administered by different judicial tribunals, is to be found in almost any volume of the reports of that high tribunal, where it is acted upon as a settled rule. Some additional authorities to the point are collected in a recent decision of the District Court of Virginia. See *Prentice* v. *Zane*, 11 *Boston Law Reporter* 208.

This court, and it is the first court so far as I know, has departed from this principle, and adopted some other rule. We have not received the construction of the statute given by the courts of the state of New York as the true sense of a law of their own state, but have taken the liberty to depart from that construction. We have undertaken to say that the courts of New York misunderstood one of their own statutes, and we have assumed the power to correct such misunderstanding; and in all this, according to my judgment, we have most erroneously departed from a principle, supposed, by the eminent judge whose words I have cited, to be universally recognized, to wit, that the judicial department of each government is the appropriate organ for construing the legislative acts of that government.

Sitting in this court of last resort, I regard it as my duty, with all respect to those who may differ from me, to reiterate

my views of the principles by which we ought to be guided in the examination of the statute laws of other states ; I regard them as first principles, which cannot be shaken by the erroneous decision of any court, whatever may be the effect of such decision upon a particular cause.

But, passing the propriety of that decision, the case as now presented (I treat them as one) offers quite another question. There are two special pleas, the validity of which is now the subject of discussion. These pleas are not demurred to, but the plaintiff has filed replications, to which the defendant has demurred. It may be proper here to remark, that the defendant has demurred specially to the replications filed by the plaintiff; and of course this brings up for consideration every exception taken, even to the form of these replications. But, as the plaintiff has pleaded over, no exception to the pleas is open to him but for error in substance, and such as would be available on general demurrer.

The first special plea sets up the statute of New York, and the duty imposed by that statute upon the mayor of the city of New York, in order to stop the progress of any conflagration, with the consent and concurrence of two aldermen, to direct any buildings likely to take fire, and convey fire to others, to be pulled down and destroyed. That the defendant, as mayor, acting under such advice and concurrence, did destroy certain buildings for that purpose which were peculiarly exposed to the fire, and but for his action would have been immediately burned up with their contents, and would have communicated the flames to adjoining buildings, unless instantly demolished. That the immediate destruction of these buildings was necessary, without waiting to remove the goods, in order to prevent the spread of the conflagration; and that at the time of the blowing up and destruction of the buildings, the goods could not have been removed or saved before the buildings would have taken fire, and communicated the flames to other buildings, and thereby endangered a great and valuable portion of the city, &c., wherefore the defendant says he did necessarily, in order to prevent, &c., blow up and destroy certain buildings, and in so doing did necessarily and una-

voidably blow up and destroy certain goods in the plaintiff's declaration mentioned, as it was lawful and necessary for him to do.

This plea, to which I have referred in a general way only, justifies not on the ground of a common law necessity, but of a necessity, so to speak, arising out of a statute. It sets up that the mayor destroyed the buildings for the purpose of stopping the conflagration, under the advice and with the consent of two aldermen, in the performance of a duty imposed upon him by the statute. It sets up the duty imposed upon him by the statute, of destroying the buildings in which the goods were stored, and alleges that the goods could not have been removed and saved before the said buildings would have taken fire, and endangered and communicated the flames to other buildings; and that the said goods were, therefore, necessarily and unavoidably destroyed. Now, if the statute under which the buildings were destroyed was a constitutional and valid law in respect to the destruction of the buildings, and if the officer, in the discharge of a public duty, lawfully performed the act by which the buildings were destroyed, and the goods were necessarily and unavoidably destroyed in the performance of that duty, it seems to me that the plea sets up a good defence. If, under the exigencies of the imminent peril which at the time of the great fire threatened the city of New York, it was the duty of the mayor to order the immediate destruction of the buildings, as necessary for the preservation of the city, the necessity and authority of instantly blowing up the buildings involved the authority and necessity of blowing up their contents with them, if they could not be removed.

Whatever may have been the view heretofore taken of the New York statute by this court, as to the authority thereby conferred to destroy goods, it has not been held, either here or elsewhere, that it is not a constitutional law, so far as regards the destruction of the buildings and to the extent to which provision has been made for compensation.

The statute, as far as I understand the prior decision of this court, has only been held void *pro tanto* where it authorized destruction without providing compensation. In the destruction

of the buildings, then, the defendant acted under a valid and constitutional law. Adopting the language of the court below, the real ground of complaint is, that the defendant exceeded the authority conferred by the statute, and thereby became a trespasser, because he destroyed not only the buildings which he might lawfully destroy, but also the plaintiff's goods, which were in the buildings, and which the statute, it is alleged, gave him no authority to destroy. Now for doing the lawful act of destroying the buidings, in order to arrest the conflagration,—an act which, in the exigencies of the case, was not only lawful, but the imperative duty of the defendant, as a public officer, to do, if the goods were unavoidably and necessarily destroyed, it not being possible to remove them but with the hazard of losing all the benefit to result from the act, the defendant ought not to, and cannot, be held liable. A public officer, acting in good faith upon a sudden and alarming emergency, under the sanction of a constitutional and valid law in a matter of public duty, is not to be held responsible for the unavoidable and necessary result of such act of duty. An injured party may have a right to resort to the public for satisfaction, but the law has ever held that the officer himself, not exceeding his power and not guilty of oppression or bad faith, is not personally liable. *The Governor and Company*, *&c.*, v. *Meredith*, 4 *T. R.* 794; *Sutton* v. *Clark*, 6 *Taunt.* 29; *Boulton* v. *Crowther*, 2 *B. & C.* 703; Nevius, J., in *Sinnickson* v. *Johnson*, 2 *Harr.* 150; Nevius, J., in *Ten Eyck* v. *Del. and Rar. Canal Co.*, 3 *Harr.* 203; *Wilson* v. *The Mayor &c.*, *of New York*, 1 *Denio* 595; *The Executors of Radcliff* v. *The Mayor, &c., of Brooklyn*, lately decided in the Court of Appeals of New York, and not yet regularly reported. 4 *Comst.* 594.

In the case in New York last cited, Chief Justice Bronson, who delivered the opinion of the court, remarked, that it would be absurd to say that public officers may be liable to an action for what they have done under lawful authority and in a proper manner. "When the state," said Justice Nevius, in another case, "authorizes an act to be done exclusively for the public interest, and appoints an agent to execute

that act, and such agent shall act within the scope of his authority, he cannot be personally responsible to individuals for the consequences of executing his commission. Should private property be necessarily and unavoidably injured, taken away or destroyed, by the execution of such trust, without any compensation provided in the act itself, the remedy can only be by contesting the constitutionality of the law or appealing to the magnanimity of the legislature." *Sinnickson* v. *Johnson*, 2 *Harr.* 150. In *Ten Eyck* v. *The Del. and Rar. Canal Co.*, 3 *Harr.* 203, the same judge expressed like views, and held, that in case of public agents, the remedy cannot be against them, but only by an appeal to the justice of the legislature that directed the act. This doctrine, even to this extent, is not without the support of other high authority. Chancellor Kent said, that it is not to be understood that a statute assuming private property for public purposes without compensation is absolutely void, so as to render all persons acting in execution of it trespassers. Some of the judicial *dicta* seem to go that length, but others do not. But he thought the reasonable and practicable construction to be, that the statute would be *prima facie* good and binding, and sufficient to justify acts done under it, until a party was restrained by judicial process founded on the paramount authority of the constitution. 2 *Kent* 340, *note,* (5*th ed.*) Without expressing my opinion as to the extent or weight of this doctrine, though it seems to be highly reasonable, it is enough for the decision of this case that we recognize the well settled principle, that public officers, acting without private emolument in a matter of public concern, shall not be personally liable for the consequential injuries arising out of an act done by them under lawful authority and in a proper manner.

Under the New York statute, the defendant, as mayor, was bound by duty to do what, according to the advice of two aldermen, was necessary to prevent the spread of the conflagration. The act which constituted them judges of the necessity of destroying the buildings, made them judges of the time at which the act of destruction became necessary. The plea avers that the buildings were destroyed at the time and in the man-

ner which the imminency of the danger demanded, and that the destruction of the buildings necessarily involved the destruction of the goods. The buildings being destroyed in the performance of a duty, which, as a public officer, the defendant was bound to undertake. The destruction of the goods was the unavoidable consequence of the destruction of the buildings. I deem it clear that the defendant ought not to be held personally responsible for the consequence of such act of duty, and that the plea sets up a sufficient defence.

The second special plea is so framed as to set up a justification arising out of the common law doctrine of necessity, and it seeks no aid from the statute. It sets out that there was a fire raging in the city of New York, which threatened destruction to a large portion of the city; that certain buildings were peculiarly exposed and likely to take fire, and communicate fire to other buildings, and but for the acts of the defendant, would have taken fire and communicated, &c.; that, to prevent the spread of the conflagration and the destruction of a large portion of the city, the immediate destruction of the said buildings was necessary, without waiting to remove the goods therein; and that for this purpose the defendant, a resident citizen and owner of valuable buildings in the city, caused the said buildings to be blown up, and did thereby necessarily and unavoidably destroy the goods, &c.

The plea does not in terms aver that the goods were the cause of alarm and danger, and therefore the immediate object of destruction, but that necessity required the immediate destruction of the buildings, without waiting to remove the goods, which unavoidably involved the destruction of the goods. The plea sets up that the buildings and the goods were so connected, that the necessity of destroying the former, necessarily involved the destruction of the latter; and the justification is made to rest upon the ground, that the right to destroy the buildings must therefore include the right to destroy the goods.

If, which I do not in the least doubt, there can be an imperious overwhelming necessity of instantly destroying buildings, without waiting to remove the goods stored therein, in order to prevent the spread of fire, I suppose this to be the

mode in which that necessity must be pleaded, the goods themselves not being the cause of alarm or danger. The plea, therefore, does not seem to be obnoxious to the objection of argumentativeness. It is proper, however, to remark, that even if the plea were argumentative, it is an objection in point of form only, which cannot be raised by general demurrer. It would not be available, therefore, to the plaintiff in the present instance, all objections to mere form having been waived by pleading over. *Gould's Plead.* 467-8, § 18.

But the leading objection taken to this plea is, that it does not show any individual or personal interest in the defendant, nor any immediate overwhelming danger to him or his property. It is urged, that to make a valid plea, setting up the exercise of the right of necessity, the defendant must show that his own property was in imminent danger, and that the destruction was for the purpose of preserving it. That it is not enough that this defendant was a resident citizen of New York, owning property and having a general interest in the safety and welfare of the city, but that he could only so interpose when the act became absolutely necessary to preserve his own property from immediate destruction. I do not so understand the doctrine, as applied to that branch of the law of necessity now in question.

Such limited view was certainly not taken by this court on the former review; on the contrary, the language used in the leading opinion would seem to lead to a very different conclusion. The right to take or destroy private property by an individual in self-defence, or for the protection of life, liberty, or property, was said to be a private, and not a public or official right. It was said, that it might be exercised by a single individual for his own personal safety or security, or for the preservation of his own property, or by *a community of individuals*, in the defence of their common safety or in the protection of their common rights. 1 *Zab.* 729. Again, in reply to the argument, that the destruction of the store and its contents, for which suit was brought, was not for the public use and benefit, in the sense in which those terms were used in the passage referred to, and therefore that the doctrine of

eminent domain was not applicable, it was said : the position would be true, if not done under the authority of the statute, but by the defendant by virtue of his natural right, and in defence of his own or of his *neighbor's property*, or by a *number of individuals* to prevent a common calamity that threatened a particular street or district.  *Ib.* 738.  The force of the argument here depends upon the doctrine implied, if not directly expressed, that an individual may, in the exercise of the common law right of necessity, take and destroy private property, not only in defence of his own but of his neighbor's property, and that individuals in a community may so act to prevent a general calamity to that community, and in protection of their common rights.  If it be asked, " who is my neighbor, for whose benefit this right of charity and kindness, as well as of necessity, may be exercised ? " let the necessity itself, for which it is intended to provide, be the answer.  But the passages I have cited have been referred to, not so much to establish the view which it seems to me may reasonably be adduced therefrom, as to show that this court is now not committed, even by *dicta*, to the more limited rule contended for by the plaintiff in error.

The common law doctrine of necessity is one that is now too firmly established to be drawn in question, and yet, perhaps, necessarily from its very character, it seems somewhat undefined as to its application and extent.  It may, by the way, be remarked, that it is not less unquestionable as an established doctrine, because its origin, so far as regards a justification at the common law, is only to be found in the illustrative arguments of the older authorities, and not in any direct adjudication.  Its exercise must depend upon the nature and degree of necessity that calls the right into action, and which cannot be determined until the necessity is made to appear.  The necessity must be immediate, imperative, and in some cases extreme and overwhelming.  Mere expediency or utility will not suffice. The doctrine seems to arrange itself under different heads, to which somewhat different rules will be applicable.

The conservation of life is one of the occasions which will call it into exercise, of which the necessity of self-preservation

is one of the marked and striking instances. Self preservation is one of the great rules of our being, implanted in us by our Creator, and recognised under this doctrine by the common law. The right to destroy property, or even life, when necessary for self-preservation, is an admitted right. Thus, as an instance frequently referred to, if two men be on one plank, insufficient to save both, and one be thrust off and drowned, the homicide is excusable, indeed justifiable through unavoidable necessity, upon the great universal principle of self-preservation, which prompts every man to save his own life in preference to that of another, when one must inevitably perish. *Noy's Max.* 25, 22. The taking of viands to satisfy urgent hunger, the necessity being made to appear, this is no felony or larceny. So a jail being on fire by casualty, and the prisoners are enabled to get out, this is no escape nor breaking of the prison. 15 *Vin.* 534.

Again there is a necessity arising out of the act of God or of strangers, as of public enemies ; and in regard to this, it is said, one man may justify committing the private injury for the public good. Instances are thus put in an old authority. In time of war a man may justify making fortifications on another's land without license ; also a man may justify pulling down a house on fire for the safety of the neighboring houses ; for these are cases of the common weal. *Malwerer* v. *Spinke, Dyer* 36, *v.* See also the *Saltpeter case,* 12 *Co.* 13 ; *Mouse's case,* 12 *Ib.* 63, &c. The ground on which this necessity rests, it is seen, is placed on the principle, not of mere individual necessity, but of the public good. The right may, as *in* the former class, be a private, and not a public or official right ; it may be one that appertains to individuals, and not to the state. But still the older authorities to which I have referred, and which are generally cited for the doctrine, place it, in these instances, not on the ground of the individual advantage of the actor, but of the common weal, in order to save the city. The case of pulling down a house in time of fire, is given as an act done for the public good.

That branch of the doctrine to which I now refer is, of course, to be distinguished from that mere appropriation for

public utility under a general state necessity, and which comes within the doctrine of the eminent domain. They are both spoken of sometimes as grounded on necessity, and they doubtless are so. But the latter stands strongly distinguished from that urgent necessity which, for immediate preservation, imperatively demands immediate action. His case who should throw up trenches on his neighbor's land for the protection of a town from an immediate hostile attack, as regards his justification, would certainly stand on a very different footing from one who, under the authority of law, should do the same act in order to guard the town from prospective and merely possible future harm. The one might be a private and unofficial act to protect the community, of which he was a part, from urgent danger; an act which might be justified under the doctrine of necessity, which for the common weal every man may do without an action. It is not necessary for my purpose to intimate any opinion as to whether, in the last case, the individual would or would not be personally responsible, but certainly the sufferer would come within the constitutional provision. The distinction between the cases, when the act was done under the pressure of threatening danger which it was necessary to avert, and when taken for the benefit of the public under a grant of power, was well put by Chief Justice Nelson, in one of the New York fire cases, arising under the statute so frequently referred to. "The one" (he says) "presents a question of responsibility by a citizen acting under the influence of *an overruling necessity* solely for *the public good*, the decision turning not so much upon the want of merit in the claim for redress, as upon the injustice of making the defendant liable, who had thus acted for the benefit of the public. The other, the case upon the statute, is a question between the sufferer and the city for whose benefit his property has been sacrificed, when the authorities of the city are empowered to determine at discretion when and under what circumstances it shall be thus sacrificed." *The Mayor of New York* v. *Lord*, 17 *Wend.* 290, 291. "I entertain no doubt," (says Justice Bronson in the same case) "that in a case of necessity, to prevent the spreading of a fire, magistrates or indi-

viduals may destroy private property without subjecting themselves to an action for damages. This is only one of the many cases where the maxim applies—*Salus populi suprema lex.*" 17 *Ib.* 297. Chancellor Kent places the rule on the same ground, and says it is lawful to raze houses to the ground in order to prevent the spread of a conflagration, because it is a case of urgent necessity, in which the rights of property must be made subservient to the *public welfare.* 2 *Kent* 338.

I have cited these authorities to show that a distinction must be made between the different branches of the law of necessity. The distinction must now be apparent between that overwhelming necessity which will justify one in the destruction of the person and property of another, and when the right is solely for the advantage of the actor, and that necessity which arises from the danger of conflagration in a great city, or other analogous instances, and which rests for its exercise upon the subservience of private rights to the public good. It may well be that a person shall not justify the destruction of another, in order to save a stranger. An assault is only justifiable when committed in the defence of one's self, or of those who stand in some near and dear relation to the actor. The necessity of self-preservation, which is for the advantage of the actor, can have no wider foundation. The right being a personal one, it is reasonable to suppose that it can be exercised only by the party in danger for his own benefit, or, as would seem to be a reasonable conclusion, for the safety of husband or wife, parent or child. But can the same rule apply to the efforts which must so frequently be made to save a city from fire, and which rests upon a less restricted principle? There can certainly be no such limitation of the right as is inconsistent with the reason of the law and the object to be obtained by its exercise. In vain would the call be made on firemen and others to stay the progress of the flames, if the imminent danger of one's own property could be the only justification of any necessary act of destruction in order to effect that object. If a man's own property must first be in imminent peril, there would be an end to all efficient efforts to stay the progress of a conflagra-

tion. I have no doubt the rule is otherwise. I think the second special plea is a good plea.

The replications I consider to be clearly bad. To both pleas they set up new facts, and in both cases they tender a traverse upon facts not set up or denied by the pleas. Looking however at the main point, which it is urged is presented by these replications, that the immediate destruction of the goods was not necessary, such defence is not set up in the pleas. The pleas are, in the one, that the buildings were lawfully, and in the other, that they were necessarily, destroyed in order to stop the progress of a conflagration, and that the destruction of the goods was the unavoidable and inevitable consequence, there not being time to remove them. The lawfulness or the necessity to destroy the buildings should have been denied by a special traverse of some material fact upon which he relied to show that the buildings were so destroyed, or by setting up in the replication that the goods might have been removed. An issue upon either of these points, if decided in favor of the plaintiff, would be fatal to the defence. If the pleas are good, which I take them to be, the replications are bad.

I am of the opinion that the judgment below should be affirmed.

RANDOLPH, J. In the various suits in the state of New York, growing out of the great fire of 1835, the courts of that state have determined that the statute, directing the mayor and two aldermen to determine when a building should be destroyed to prevent the spread of a conflagration, was constitutional, and intended merely to define and regulate the common law power of necessity, without giving any new power; that property destroyed in pursuance of the act was not taken under the right of eminent domain for public use, but was destroyed under the right of necessity to prevent a great calamity; and that, consequently, the corporation of New York were only liable to the extent of the statute, viz. for damages in destroying the buildings, and the goods of such as had an interest in the buildings, and not liable for the goods destroyed belonging to the persons. 17 *Wend.* 235 ; 18 *Ib.* 126 ; 20 *Ib.* 139 ; 25 *Ib.*

157; 2 *Denio* 461, and opinions of Oakley, J., in the Superior Court, and of Bronson, J., in the Supreme Court, in the case of *Lawrence* v. *The Mayor, &c., of New York.* No action seems to have been brought against the defendant personally, in the state of New York, for any act which he performed or directed during the fire; but, after the various opinions which had been given in the corporation cases, the plaintiffs in these suits (for there are a number of them depending on this one) thought proper to seek a foreign jurisdiction, not, it is presumed, because they sought to reverse the judgments of a state court upon its own statutes by the judiciary of another state, but simply because, these actions being transitory in their nature, they preferred to have them brought here.

To the declaration, charging the defendant with destroying the plaintiffs' goods by gunpowder, the defendant pleads simply in bar the statute of the state of New York, directing the mayor, &c., and two aldermen to destroy buildings to prevent the spread of conflagration, and that the goods were in one of the buildings so destroyed. Three justices of the Supreme Court, sitting in bank, decided unanimously that the plea was good. The cases were brought to this court by writ of error, and of the eight judges who heard the cause, five determined that the plea was bad, and three that it was good; the last decision settled the case, although it presented the strange anomaly of being the decision of five members of the Court of Errors against the opinions of six members. The cases having been remanded, new pleas were filed, viz: 1. Not guilty. 2. Justification under the statute for destroying the buildings in which the goods were, and in doing so, the unavoidable necessity of destroying the goods therein, &c. 3. The common law plea of necessity. On the first plea issue is joined; to the second and third, replications are put in, to which there are demurrers and joinders. These replications are not supported by the plaintiffs' counsel, but are given up as defective. They are argumentative, double; they neither deny the allegations of the pleas, confess and avoid them, or set up new matter with a traverse, and they are bad, for nearly or quite all the causes assigned. These replications being thus disposed of,

the next question is, are the pleas good. The third is the common law plea of necessity (*Com. Dig.* 3 *M.* 20 and 30; 3 *Chit.* 1118), that it was necessary to destroy the stores to prevent the spread of the conflagration, and the goods now in controversy could not be removed or saved before the buildings would have taken fire, and that the defendant did "necessarily and unavoidably blow up by gunpowder, burn and destroy, the said goods." This plea is unquestionably good, and the plaintiffs should have taken issue thereon. It even avers, in accordance with the opinion delivered in this court, that the defendant was at the time a resident and owner of property in the city of New York, which must be considered altogether unnecessary, and was doubtless so considered at the time by the distinguished gentleman who drew these pleas; for when trying the case in the Essex Circuit, formerly alluded to, against Capt. Williamson for blowing up a building in the city of Newark to prevent the spread of fire, the plea of necessity was held by him a good justification of the defendant, although he was at the time a mere visitor in the place. A contrary doctrine would make every fireman, captain of a ship, or sailor, a trespasser for acts done in extreme necessity, or prevent all action in the severest calamities, except by persons immediately interested. The law knows no such distinction; it looks to the act, not to the actor; to the necessity of the transaction, not to the character or interest of him who performs the deed.

On this plea, certainly, the defendant is entitled to judgment.

There is more difficulty in the second plea, which arises principally from the former decision of this court. It is conceded, by defendant's counsel, that if the plea is the same in substance as that formerly overruled, it cannot be sustained. This no doubt is correct; the decisions of this court, the highest in the state, constitute the law on the subject, until altered or reversed by the same court or changed by the legislature. The plea which this court overruled was simply a plea of justification under the New York statute, that the defendant and two alderman, in order to prevent the spread of conflagration,·

caused to be destroyed, pursuant to this statute, certain build-
ings in the city, in which were the goods in controversy, with-
out any thing farther. The objection taken was, that although
the statute authorized the destruction of the building, it did
not give license to destroy the goods ; or if it did, as it provided
no compensation therefor, the statute so far was unconstitu-
tional. Upon one or both of these points the court held the
plea bad ; but it was never intimated by any member of the
court that, so far as regards the blowing up of the building,
the statute was unconstitutional and the act illegal, nor was it
pretended, that if consequential loss or injury arose thereby,
which could not have been foreseen or prevented, that de-
fendant would be liable to an action therefor. The complaint
was, that this plea destroyed the right of trial by jury on a
question of necessity or no necessity, by making the judgment
of the mayor and two aldermen conclusive on that point,
even in a case for the destruction of goods, the payment for
which was not provided for by statute. That it took away the
common law right of trying the question of necessity, and if
found for the plaintiff, of obtaining pay for the goods in that
way, while it provided no satisfaction in any other way. The
counsel, in his argument before this court, says, 1 *Zab.* 719,
" The plea does not set up any act of imperative necessity,
and then aver that the consequence was involuntary."—" The
evidence of necessity was the judgment of officers charged
with the duty," and the learned judge who delivered the
opinion of this court says, 1 *Zab.* 735–6, " The very effort and
force required to destroy personal property which could be
saved from conflagration by any possibility, would be suffi-
cient to remove it, and save it from destruction ; but if it were
beyond the possibility of escape or preservation, its destruction
by the act of these officers could work no injury which would
not otherwise have occurred, and in that case such a defence,
if properly pleaded and proved, would avail them." Again,
" I will not say, that if in the destruction of a building by gun-
powder, some consequential injury or loss should result to the
personal property of another, which could not be foreseen or
provided against by ordinary prudence, that these officers

would have been liable to an action in their individual capacity for such loss or injury, or that they might not have pleaded this statute in bar of such action." But the judge finds no warrant in the statute for the destruction of personal property by direct force and violence. Now it does seem to me that the plea now before us was drawn with great care and skill to meet the very difficulties and case suggested by counsel and court, and that it in fact does meet them all. In the dissenting opinion of the Supreme Court on the pleas now before us, which was given by the same judge who delivered the opinion of this court on the former plea, it is stated, as delivered on that occasion, " that it (the New York law) was a constitutional law, so far as it extended to the destruction of buildings, providing compensation to the owners thereof." The plea before us then sets out, by way of preamble, that by virtue of this constitutional law, he, being mayor of New York city, and Taylor and Benson aldermen, at the time of the fire, and they concurring, that, to prevent the further spread of conflagration and the destruction of property, the immediate destruction of the buildings wherein the goods in question were, was absolutely necessary, without waiting to remove the same, and that without such immediate destruction of said buildings, the fire could not have been arrested, but would have extended and destroyed a large part of the city. Wherefore for such cause the defendant did necessarily (doing as little damage or injury as it was possible for him to do) blow up and destroy the said buildings, and, in so doing, did necessarily and unavoidably blow up and destroy the said goods. This plea is certainly very different from that formerly overruled by this court, for that, if good, was a complete bar to the action: it admitted of no answer and no issue to the country; it said nothing about the necessity for doing the act; it entirely absorbed that question, and substituted the opinion of the mayor and aldermen for the verdict of a jury; under that plea the plaintiff could by no possibility, under any aspect of his case, obtain payment for his goods destroyed; whereas the present plea merely places the defendant where the law and the constitution and the decision of this court placed him, that

is, in the doing, as a public officer, of a lawful and constitutional act, viz. destroying a building to prevent the spread of a conflagration ; and then alleges, that being thus placed as a public officer, and required by law to act promptly, he was compelled from absolute necessity, in order to effect the object desired, to destroy this building before the goods could be removed therefrom. It thus tenders the issue of necessity to the plaintiff, and he may take issue thereon to the country and have a trial by jury ; and if it appear that such necessity did not exist, he may recover the full value of the goods.

This plea is, then, different both in form and substance from that overruled, and ought to be sustained.

1. It sets up the proceedings of a public officer in the lawful discharge of his duty, and if in doing this he has unintentionally and necessarily injured the plaintiff he is not answerable therefor. 4 *T. R.* 794; 2 *Harr.* 150; 1 *Denio* 595, *Executors of Radcliff* v. *Mayor of Brooklyn*, not yet reported, except in pamphlet form. This must be considered an unavoidable consequence springing from the direct lawful act of the defendant in blowing up the building. The distinction which governs actions of trespass (for direct force) and on the case (for consequences) does not apply ; for trespass alone, if any action, would lie for any injury whatever arising from the original cause: all injuries must be caused by the direct force and violence of the blowing up, and, according to the doctrine of the celebrated squib case, trespass, and not case, would lie. The true distinction is between the direct act intended, and done accordingly, viz. the destruction of the building, and the unintentional and unavoidable consequence growing out of that act, viz. the destruction of the goods : the first is justified by the statute according to the decision of this court, the second by the law of necessity, if the plea be true. Suppose, instead of an action for goods, this suit was for an assault and battery, would not this plea, if true, be a complete justification ? Nay, if the defence set forth in this plea were offered in a case of homicide, with a trifling variation as to the position of the person, would this defence be overruled, and the defendant convicted for murder or manslaughter on the ground

that the homicide, though unintentional, was committed in the performance of an unlawful act?

2. This whole proceeding occurred in another state, and arose under the statutes of that state; and in all the actions which have there been brought the conduct of the defendant has been sustained, the constitutionality of their law vindicated, and its application to the case in hand maintained.    Trespass is a transitory action it is true, but why should this state be made the arena for judicial conflict?    Are we to sit in judgment upon the decisions of the highest courts of the state of New York, made upon the construction of their own statutes, and instead of adopting the invariable rule of the United States courts, which hold the decisions of state courts upon their own laws to be paramount, are we to say coolly to the judiciary of our sister states, you do not understand your own laws, your decisions are worthless, and we will overrule them, declare your law unconstitutional, and mulct in damages for their violation your citizens and officers?    If such should become the general course of decisions in this country, it would require no great skill to estimate the duration, or " calculate the value of the Union."

After all the suits against the corporation had failed in regard to the goods which were destroyed by the blowing up of the buildings, these actions are brought against the defendant, individually, to compel him personally to pay the damages growing out of a lawful act, which a statute of the state of New York required him to perform, and to do which his plea alleges it was " absolutely necessary " to destroy the goods, may he not plead and prove that?    Why, if there were no statute, any man could do that at common law.    Does the statute or any principle prevent the defendant from doing so, and at the same time of availing himself of the position where the law and his duty placed him?    In this suit we only know the defendant, and if damages be recovered, they will be against him personally, and we know of no legal obligation in the city of New York to relieve him: this, it is true, would be of no consequence in a clear case against the defendant, but in a case like the present it is worthy of consideration.

3. I think the destruction of the property in question does not come under the right of eminent domain, but under the right of necessity, of self-preservation. The right of eminent domain is a public right; it arises from the laws of society, and is vested in the state or its grantee, acting under the right and power of the state, and is the right to take or destroy private property for the use or benefit of the state, or of those acting under and for it. The right of necessity arises under the law of nature; is older than the laws of society or society itself. It is the right of self-defence, of self-preservation, whether applied to persons or to property. It is a private right vested in every individual, and with which the rights of the state or state necessity has nothing to do. Of the right of eminent domain constitutions take cognizance, and say that " private property shall not be taken without just compensation," because it is a public right belonging to the state; but of the right of necessity, constitutions take no further notice than they do with any other private right, all being left under the regulation of the law and the legislature. A statute is passed to take the land or building or property of an individual for a fortification, a lighthouse, or a railroad: this comes under the right of eminent domain, and the constitution steps in and requires payment. A right of self-defence, of self-preservation, without regard to the lives or property of others, exists by necessity in every individual placed in certain situations at sea or on land, in the country or in a city; and if the legislature think proper to pass a statute to regulate a portion of that right in a particular city, and instead of leaving its exercise to the blind action of all, make it the duty of certain officers to do the act, does this convert what was before a mere right of necessity in individuals into a public right of eminent domain? If it does, I am at an utter loss to understand the transmutation, and, notwithstanding opinions to the contrary, I do not believe that the statute of New York under consideration has any thing to do with the right of eminent domain, nor have I ascertained that in any particular it is unconstitutional.

In conclusion, I am of opinion that, taking the decision of this court on the former occasion as our guide, the plea in

question is good; and whether we consider that decision as in force or reversed, I also consider the plea good, and that it should be sustained.

*For affirmance*—Justices RANDOLPH and CARPENTER, and Judges CORNELISON, VALENTINE, WILLS, RISLEY, and PORTER.

*For reversal*—The CHANCELLOR and Judge SCHENCK.

CITED *in Black* v. *Del. & Rar. Can. Co.*, 7 *C. E. Gr.* 422.