233 N.J. Super. 38 (1989)
558 A.2d 15
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID LOVE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1989.
Decided May 4, 1989.
*40 Before Judges LONG and KEEFE.
Clare M. Pessolano, Assistant Deputy Public Defender, argued the cause for the appellant (Alfred A. Slocum, Public Defender, attorneys; Clare M. Pessolano, on the brief).
Arthur S. Safir, Deputy Attorney General, argued the cause for the respondent (Donald R. Belsole, Acting Attorney General, attorney; Arthur S. Safir, on the brief).
The opinion of the court was delivered by KEEFE, J.S.C. t/a
Defendant David Love was indicted along with George Perry and Jean D. Phillips for unlawful possession of a controlled *41 dangerous substance, contrary to N.J.S.A. 24:21-20 (count one); possession of a controlled dangerous substance with intent to distribute it, contrary to N.J.S.A. 24:21-19a(1) (count two); and, distribution of a controlled dangerous substance, contrary to N.J.S.A. 24:21-19 (count three). Perry entered a plea of guilty to count three of the indictment and was sentenced by the trial court to an indeterminate term at the Youth Correctional Institution Complex. The remaining counts of the indictment against Perry were dismissed on motion by the State at sentencing. As a result of certain pretrial motions which addressed the admissibility of Phillips' prior conviction and the admissibility of various statements attributed to the defendants, Phillips moved for, and was granted, a severance of her trial.
The jury returned a guilty verdict against defendant on counts one and two and a not guilty verdict on count three. At sentencing the trial judge merged the defendant's conviction for possession of a controlled dangerous substance (count one) into his conviction for possession of a controlled dangerous substance with intent to distribute it (count two) and placed defendant on probation for a period of three years but ordered that he serve 300 days in the Passaic County jail, submit to drug monitoring, and surrender his gun permit as conditions of probation. The trial judge also imposed a penalty of $30.00 payable to the Violent Crimes Compensation Board. Defendant filed a timely notice of appeal. On May 22, 1987, slightly over two months from the day he was sentenced, defendant filed a motion for a stay of his sentence and for bail pending appeal. Defendant's motion was granted.
He now raises four issues on appeal.
POINT I DEFENDANT'S FUNDAMENTAL CONSTITUTIONAL RIGHTS WERE VIOLATED BY HIS UNLAWFUL ARREST AND THE COURT'S FAILURE TO EXCLUDE INADMISSIBLE EVIDENCE OBTAINED BY MEANS OF AN ILLEGAL ENTRY. (U.S. Const., Amends. IV and XIV; N.J. Const. (1947) Art. I, par. 7). (Not Raised Below).
POINT II DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS DUE PROCESS RIGHTS TO A FAIR *42 TRIAL BECAUSE OF HIS COUNSEL'S FAILURE TO REQUEST A SUPPRESSION HEARING. (U.S. Const. Amends. VI and XIV; N.J. Const. (1947) Art 1, par. 10).
A. Defense Counsel's Performance Was Deficient.

B. Defense Counsel's Deficient Performance Prejudiced the Defense.

POINT III DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION AND HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY THE CONTRADICTORY AND INADEQUATE LIMITING INSTRUCTION GIVEN TO THE JURY REGARDING THEIR USE OF DEFENDANT'S CUSTODIAL STATEMENTS. (U.S. Const. Amend. V and XIV; N.J. Const. (1947) Art. I, pars. 1 and 10). (Partially Raised Below).
POINT IV THE COURT BELOW FAILED TO FOLLOW THE APPROPRIATE SENTENCING GUIDELINES AND FAILED TO PROPERLY CONSIDER THE AGGRAVATING AND MITIGATING FACTORS IN ITS IMPOSITION OF SENTENCE.
We have reviewed the record of this case in detail in light of the issues raised on appeal and conclude that none of the issues have merit. R. 2:11-3(e)(2). However, some comment on each of the points is appropriate.

I.
Defendant was arrested as a result of the search of the apartment apparently rented in the name of his girlfriend, Phillips, and shared with her brother, defendant Perry. The search warrant was issued by the municipal court judge based upon the surveillance of the Phillips apartment and the arrest of Lemont Sanders, who was observed to have made a drug purchase from Perry only shortly before the search warrant was sought. When Sanders was arrested he was found to be in possession of three glassine envelopes with the words "Death Wish" inscribed on them. Sanders tried to destroy the evidence by swallowing it when he was stopped by the police. The contents of the envelopes were tested and found to contain both heroin and cocaine.
The search was executed by six plain clothes detectives from the Paterson Police Department. The apartment to be searched was on the third floor of a building on Twelfth Avenue. When the detectives entered the building and ascended the stairs they met Perry on the third floor landing. The police recovered two *43 glassine envelopes from Perry inscribed with the logo "Death Wish". These glassine envelopes were identical to the ones that they had just confiscated from Sanders. Perry was placed under arrest and the detectives proceeded to the Phillips' apartment. They entered the apartment without knocking through a closed but unlocked door. It is reasonably inferable from the evidence that Detective Humphrey, shortly after entering the apartment, announced that he had a search warrant, whereupon defendant said there was no need to "tear up the place." After saying that, defendant immediately walked into the bedroom, retrieved a brown stocking from the top drawer of the dresser and handed it to the detective. The stocking contained 21 glassine envelopes imprinted with the logo "Death Wish".
Defendant contends for the first time on appeal that, because there was a no-knock entry of the apartment, his arrest and the search was unlawful. The issue properly should have been raised on a motion to suppress before trial. Failure to do so ordinarily results in a waiver. State v. Jordan, 115 N.J. Super. 73 (App.Div. 1971), certif. den. 59 N.J. 293 (1971). Although a suppression motion was made before trial by counsel for Perry and Phillips, that motion simply challenged the sufficiency of the evidence to establish probable cause for the issuance of the warrant. For reasons not relevant here, counsel for defendant did not participate in the suppression motion. However, he was made aware of the results and advised the trial judge that he would be bound by that decision. On appeal defendant now offers the testimony given at the suppression hearing and during the course of trial to argue that, had the issue been raised appropriately, it would have been granted. Thus, defendant attempts to do that which Jordan forbids. However, in light of the issue raised in Point II of defendant's brief concerning the effectiveness of counsel we have elected to address the substantive issue because its resolution will resolve both issues.
*44 The common law "knock and announce rule" is considered to have been embodied in the Fourth Amendment to the United States Constitution. Miller v. United States, 357 U.S. 301, 308, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332 (1958). However, in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Supreme Court mentioned Miller as an example of a "supervisory power" case, and, thus, not binding on the states by reason of the Fourteenth Amendment. Id. at 33, 37-43, 83 S.Ct. at 1629, 1631-35. In State v. Fair, 45 N.J. 77 (1965), our Supreme Court decided a "no knock" issue on the assumption that Ker v. California, supra, did not impose that aspect of the Fourth Amendment on the states. 45 N.J. at 86. Because New Jersey has no statute requiring the police to knock before entering to execute a warrant, the Court observed that the common law of arrest applies. The general common law rule was that a police officer must demand admittance and explain his purpose before entry. That rule, however, had certain notable exceptions where: 1) immediate action was required to preserve evidence; 2) the officer's peril would be increased if knocking preceded entry; or 3) the arrest would be frustrated. Id. See also State v. Smith, 37 N.J. 481 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963).
In this case we find that the entry without knocking clearly fits within the first exception. As noted earlier, the police observed what they believed to have been a drug transaction between Perry and Sanders. Detective Humphrey followed Sanders from the scene and eventually pulled his car over to the side of the road. In the short period of time that it took him to exit his vehicle and approach Sanders, he saw Sanders place the suspected contraband into his mouth. Detective Humphrey struggled with Sanders, forced his mouth open and extracted the three glassine envelopes. Thus, the police had reason to know that the packages of drugs being sold by Perry were small enough to swallow if sufficient time was given. In addition, the detectives observed Perry hand defendant a "small brown bag-shaped object" as defendant and *45 Phillips entered the building. That object turned out to be the brown stocking which defendant retrieved from the dresser drawer containing the 21 glassine envelopes similar to the ones seized from Sanders. Under the circumstances, the police officers could reasonably conclude that the evidence could be either consumed or flushed down a toilet in a very short period of time if prior warning of their entry was given. We find, therefore, that the mode of entry into the apartment for the purpose of executing the search warrant was lawful and that both the search and the arrest of defendant, incidental to the search, were equally lawful.

II.
Defendant contends that "[d]efense counsel's unprofessional errors and lack of legal proficiency deprived the defendant of his meritorious Fourth Amendment claim, which if properly litigated would have resulted in the exclusion of the State's only evidence against the defendant and rendered his arrest unlawful." The standard applicable to Sixth Amendment claims was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). Defendant must first demonstrate that his attorney's performance was deficient in that it fell below an objective standard of reasonableness. Fritz, Id. at 58. However, there is a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. Id. at 52. Counsel need not fear of being found to have acted below an acceptable standard of care for failing to make every conceivable motion that can be made on behalf of his client. It is quite apparent to us, for the reasons stated in Point I, that a motion made by defense counsel on the theory now advanced on appeal had no real chance of success. Thus, we find that defendant has failed to establish the first prong of the Fritz test. Id. at 52.
*46 Finally, at oral argument counsel for the defendant requested that we consider the continuation of bail if we should decide the issues advanced against him so that he might apply to the trial court for reconsideration of his sentence. It appears that defendant had only ten days remaining on his sentence before eligibility for parole could have been considered. It is possible, in view of defendant's positive record, that parole would be looked upon favorably. Thus, the revocation of bail and the return of defendant to jail with the attendant delay in processing him anew for parole consideration might result in a longer sentence than he would have served had he not appealed. We consider that to be an undesirable result and, therefore, grant the motion on condition that defendant's motion for reconsideration of the sentence be filed within 30 days of the date this opinion is issued.
Affirmed.