257 N.J. Super. 404 (1992)
608 A.2d 480
HENRY WALLACE, PLAINTIFF,
v.
CITY OF ATLANTIC CITY, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Atlantic County.
Decided April 21, 1992.
*405 Henry Wallace, plaintiff, Pro se.
Samuel D. Lashman for defendant (Paul J. Gallagher, City Solicitor, attorney).

OPINION
WINKELSTEIN, J.S.C.
The novel question presented in this case is whether the destruction of the property of an innocent third party by the police pursuant to a lawfully executed search warrant requires the innocent third party to be compensated for his loss. The matter was tried without a jury. This opinion is an inclusive supplement to the court's oral decision from the bench.
*406 The facts are as follows. On June 27, 1991, at 7:00 p.m., a no-knock search warrant was executed by the Atlantic City Police who forcefully entered a second floor apartment at 1721 McKinley Avenue, Atlantic City, owned by the plaintiff. The police made two arrests, including the tenant, confiscated $2,867 in U.S. currency in various denominations, 69 glassine bags, all of which contained a white powder substance, and at least one of which field-tested positive for heroin. Various other narcotics paraphernalia were also found.
During the course of the search and arrests three doors at the premises were broken. The total cost of labor and material necessary to repair the doors was $900.97.
It is undisputed that the police acted properly in executing the warrant. There is no allegation that they used excessive force or were negligent. Similarly, it is not alleged, nor is there any evidence, that the plaintiff had anything to do with the narcotics activity. His sole involvement is as the landlord and owner of the property. Plaintiff seeks compensation for the damage done by the police in the lawful execution of the search warrant. There appear to be two possible theories of liability.
First, can plaintiff recover under a tort theory? I find that he cannot. There is no allegation of negligence or excessive force used by the police. The Tort Claims Act, specifically N.J.S.A. 59:3-3, provides that a public employee is not liable if he acts in good faith in the execution or enforcement of any law. N.J.S.A. 59:3-9 provides that a public employee is not liable for his entry upon any property where such entry is expressly or impliedly authorized by law. Here, as stated, there is no evidence of misconduct or negligence on the part of the police. Entry was made as a result of a lawfully executed search warrant. No-knock search warrants are valid, State v. Love, 233 N.J. Super. 38, 558 A.2d 15 (App.Div. 1989) certif. denied 118 N.J. 188, 570 A.2d 954 (1989), and searches with warrants are presumed valid. State v. Kasabucki, 52 N.J. 110, *407 244 A.2d 101 (1968). Therefore, on a tort theory, plaintiff's claim must fail.
There is, however, another theory for compensation. Does the destruction of an innocent third party's property by the police while lawfully executing a search warrant constitute a taking under the State and Federal Constitutions? U.S. Const. Amend. V; N.J.S.A. Const. Art. 1 par. 20. If it does, the prohibitions under the Tort Claims Act would be inapplicable. This is an issue of first impression in this jurisdiction.
The concept of whether governmental action amounts to a taking of property has always presented a "vexing and thorny problem." Washington Market Enterprises v. Trenton, 68 N.J. 107, 116, 343 A.2d 408 (1975). "A court assigned to differentiate among impacts which are and are not `takings' is essentially engaged in deciding when government may execute public programs while leaving associated costs disproportionately concentrated upon one or a few persons." Id., pp. 116-117, n. 6, 343 A.2d 408 n. 6
The federal courts have not developed any rigid rules for determining when economic injuries caused by legitimate governmental conduct should be disproportionately borne by the property owner and when it should be publicly supported. Each case is judged on its own facts. Usdin v. Environmental Protection Dep't of N.J., 173 N.J. Super. 311, 321, 414 A.2d 280 (Law Div. 1980), aff'd, 179 N.J. Super. 113, 430 A.2d 949 (App. Div. 1981).
Usdin involved a regulatory taking. The case before the court involves a physical intrusion, the breaking down of the doors, rather than a regulation of the owner's use of his property. A distinction between the two was drawn in Loretto v. Teleprompter Manhattan Catv Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), where the question as to whether or not a minor, but permanent, physical occupation of an owner's property authorized by the government constituted a taking of property for which just compensation was due *408 under the Fifth and Fourteenth Amendments of the United States Constitution. As Justice Marshall explained:
... the Court has often upheld substantial regulation of an owner's use of his property where deemed necessary to promote the public interest. At the same time, we have long considered a physical intrusion by government to be a property restriction of an unusually serious character for purposes of the Takings Clause. Our cases further establish that when the physical intrusion reaches the extreme form of a permanent physical occupation, a taking has occurred. In such a case, `the character of the government action' not only is an important factor in resolving whether the action works a taking but also is determinative. p. 426
Furthermore, where a physical intrusion is involved, constitutional protection cannot be made to depend upon the size of the area permanently occupied. It is not a question of the degree of the physical intrusion. Such an intrusion to any degree may require compensation under the Fifth Amendment. Id. at 430, 102 S.Ct. at 3173.
The difference in the court's treatment of a physical taking vis-a-vis a regulatory taking was also emphasized in Keystone Bituminous Coal Ass'n v. DeBenedictis, 581 F. Supp. 511, 517 (W.D.Pa. 1984), aff'd, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). Pointing out that the Supreme Court had not drawn a bright line between police power and taking, and that each case turned upon its particular circumstances, the court nevertheless concluded that any permanent physical occupation of the land by the government constituted a taking. Keystone, supra, p. 517, citing Loretto, supra, 458 U.S. at 427, 102 S.Ct. at 3171.
National Board of Y.M.C.A. v. United States, 395 U.S. 85, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969), cited in Usdin, supra, 173 N.J. Super. at p. 321, 414 A.2d 280 provides additional guidance. In Y.M.C.A. plaintiffs sought compensation for damages committed by rioters to buildings occupied by United States troops during riots in the Panama Canal Zone in January 1964. The Court of Claims held that the actions of the army did not constitute a taking within the meaning of the Fifth Amendment. The Supreme Court, in a 6-3 opinion, affirmed, based on *409 the majority's conclusion that the evidence showed the troops were acting primarily in defense of the plaintiffs' buildings, not primarily for the public good. The Court said:
But where, as here, the private party is the particular intended beneficiary of the governmental activity, `fairness and justice' do not require that losses which may result from that activity `be borne by the public as a whole,' even though the activity may also be intended incidentally to benefit the public. 395 U.S. at 92, 89 S.Ct. at 1515.
In other words, since the Court found that the troops had physically occupied the property for the benefit of the property owner, rather than for the benefit of the public as a whole, the property owner was not entitled to just compensation. The Court went on to say, however, that ordinarily governmental occupation of property deprives the owner of his use of the property, and it is this deprivation for which the Constitution requires compensation. Id. at 92, 89 S.Ct. at 1515.
The Court utilized an "intended beneficiary" test, which was accepted by both the majority and the dissent.[1] Under this test if the particular intended beneficiary was the public, rather than a private individual, compensation would be warranted. However, if the particular intended beneficiary was a private individual, rather than the public as a whole, there would be no entitlement to just compensation even if the public was an incidental beneficiary.
Applying the above analysis to the facts of the instant case, plaintiff is entitled to compensation. The search was conducted for a public purpose; i.e., a search for and seizure of property and concomitant arrests as part of an ongoing criminal *410 investigation. As part of the investigation the police damaged plaintiff's property. As an innocent third party he should not bear the sole financial burden of such an undertaking. Since the damage was incurred for the public good, rather than for the benefit of the private individual, the public should bear the cost. The intended beneficiary of the police action was not plaintiff, but society as a whole.
In concluding that an innocent third party should be justly compensated for his loss, further support may be drawn from the Supreme Court's analysis in State v. 1979 Pontiac Trans Am, Color Grey, 98 N.J. 474, 487 A.2d 722 (1985), where it had to decide the constitutionality of the New Jersey Forfeiture Statute, N.J.S.A. 2C:64-1 to -9, as applied against a property owner who was unaware of the illegal use of his property. Based on its recognition that a forfeiture results in a taking of private property for public use without compensation to the owner under the Fifth Amendment of the Federal Constitution and Article 1, paragraph 20 of the New Jersey Constitution, Id. at 481, the Court construed the statute to exclude innocent owners who did not consent to or know of the illegal use of their property and who did all that reasonably could have been expected to prevent the illegal use. Id. at 485. Factors to be considered were the relationship between the owner and user, the manner in which the owner transferred possession of the property to the wrongful user, the nature of the property surrendered, and the freedom of use or scope of permission given. Id. at 486.
Plaintiff had no knowledge that narcotics activities were taking place at the rented premises. He had a verbal lease with the tenant as the result of an arms length transaction, and had given up to her control of the apartment. Upon making the lease, the lessee is entitled to the full, exclusive and uninterrupted possession of the entire premises. 23 N.J.Pract., (Mark & Kosona), 4th Ed., citing, inter alia, Friedlander v. Grand, 116 N.J. Eq. 537, 174 A. 506 (E. & A. 1934). There is nothing in the record which would show that plaintiff was *411 aware of, or should have been aware of, the illegal use of the property. Without such actual or constructive knowledge there was no duty on his part to prevent the illicit activities.
Some collateral issues remain to be addressed.
Defendant attempts to draw an analogy between the criminal activity which took place in plaintiff's apartment and a common law nuisance. It is argued that a municipality may, in the exercise of its police power and without compensation, destroy buildings or structures which are a menace to public safety or are a nuisance. City of Paterson v. Fargo Realty, Inc., 174 N.J. Super. 178, 415 A.2d 1210 (Cty.Ct. 1980). See, also McQuillan Mun. Corp. § 24.22 and 24.23, 3rd Ed., 1988.[2] The line of cases cited offers little support for defendant's position as they concern destruction of private property for the public safety where buildings or other property present public hazards or nuisances. The fact, however, that there were illegal drug activities taking place at the premises does not render the property itself a nuisance.
There is one out-of-state case, Emery v. State of Oregon, 297 Or. 755, 688 P.2d 72 (1984), which concerns whether the destruction of evidence by the state constitutes a taking. The Court held in a 4-3 decision that it did not. Emery is distinguishable from the instant case since the owner of the destroyed evidence was not an innocent third party, having pled guilty to second degree manslaughter. Furthermore, the holding is inconsistent with the protection afforded to innocent third-parties in State v. Pontiac Trans Am, supra.
There is one final point. Placing the burden on the public purse rather than on the purse of an innocent third party *412 should not impair the police from effectively doing their job. It is a question of allocation of financial resources which local governments face every day. Just as a local government must decide how many police to hire, whether to purchase new equipment, and similar issues, the decision of how much to allocate for the destruction of property during the execution of search warrants is a question to be determined at budget time, not by the police officer on the street. Constitutional protections should not be dependent upon a line item in a municipal budget.
Moreover, every time property is destroyed by a governmental official such action will not automatically require payment of just compensation.[3] The holding herein is limited to a physical taking of property belonging to an innocent third party for a public purpose.
For the above reasons I find that plaintiff is entitled to just compensation. Judgment is entered in favor of the plaintiff against defendant in the amount of $900.97.
NOTES
[1] The dissent in Y.M.C.A. differed with the majority in its construction of the facts; the dissent concluded that the purpose of the Army moving troops into the buildings was not to protect the buildings, but to keep the riot from spreading. Id. at 99, 89 S.Ct. at 1519. The dissent found this to be a public purpose and concluded that whenever the government determined that one person's property was essential to the war effort, and appropriated the property for the common good, the public purse, rather than the individual, should bear the loss. Ibid.
[2] American Printworks v. Lawrence, 23 N.J.L. 590 (E. & A. 1847), Hale v. Lawrence, 21 N.J.L. 714 (E. & A. 1848), and American Printworks v. Lawrence, 21 N.J.L. 248 (Sup.Ct. 1848) were also cited. They concern the right to burn down private property to stop the spread of fire without paying just compensation. The cases are distinguishable from this case as they were based upon theories of inevitable necessity, or self preservation, and not a theory of eminent domain.
[3] For example, compensation is not payable if police forceably enter a property to stop a burglary in progress; the intended beneficiary would be the property owner, not the public at large. Similarly, when fire fighters damage a building fighting a fire therein, the intended beneficiary is the property owner and no compensation would be payable. The fact that the public would be an incidental, rather than the intended, beneficiary is not sufficient to warrant compensation.