**Jim KELLEY, Appellant,**

v.

**STORY COUNTY SHERIFF,**
Story County, Appellees.

No. 98–0030.

Supreme Court of Iowa.

June 1, 2000.

Stephen Howell of Newbrough, Johnston, Brewer, Maddux & Krauth, L.L.P., Ames, for appellant.

C. Roderick Reynolds, Assistant County Attorney, for appellees.

McGIVERIN, Chief Justice.

The main question here is whether damage to private property caused by law enforcement officers while executing an arrest warrant is a taking of private property under article I, section 18 of the Iowa Constitution, triggering the property owner's right to compensation. In a small claims action brought by plaintiff property owner, Jim Kelley, against defendants Story County and the Story County sheriff, the district court judge concluded that the damage caused to plaintiff's property did not amount to a taking of private property under article I, section 18 of the Iowa Constitution and that defendants were immune from tort liability under Iowa Code sections 670.4(3) and 670.12 (1997) of the Municipal Tort Claims Act.

We granted Kelley's application for discretionary review.

Upon our review, we affirm the decision of the district court.

## I. Background facts and proceedings.

Plaintiff Jim Kelley owns residential real property in Story County, Iowa. Kelley leased the property to Penny Ball.

Late in the evening of May 19, 1997, officers from the Story County sheriff's office arrived at Penny Ball's residence to execute a warrant for the arrest of William James Vary. Vary was apparently a frequent guest or resident of that property. The officers knocked on the front door, identified themselves and demanded that they be admitted for purposes of making an arrest. When the door was not answered, the officers used force to enter, causing damage to two front doors in the residence. The officers found Vary in the residence and arrested him.

Thereafter, Kelley, the owner of the residence, filed an action against Story County and the Story County sheriff[1] on the small claims docket of district court, *see* Iowa Code § 631.1, seeking compensation for the damage caused to the two doors when the officers entered the residence. The district associate judge concluded that the officers exercised due care under Iowa Code section 804.15 (authorizing law enforcement officer to use such force as is reasonably necessary to enter premises for purposes of making an arrest when officer has reasonable cause to believe that a person whom the officer is authorized to arrest is present) in entering the residence to arrest the suspect, and thus the county and sheriff were immune from liability under Iowa Code chapter 670. Kelley appealed that decision to a district court judge.

The district court judge affirmed, concluding that defendant county was immune from liability under section 670.4(3) (municipality is immune from liability for any claim based upon an act of an officer exercising due care in the execution of a statute), and that the sheriff, as an officer and employee of Story county, was not liable due to section 670.12, which removes personal liability against officers and employees of the county for claims which are exempted under section 670.4(3). The court also concluded that the damage caused to Kelley's property did not constitute a taking of private property under article I, section 18 of the Iowa Constitution and therefore Kelley was not entitled to compensation from defendants.

We granted Kelley's application for discretionary review. *See* Iowa Code § 631.16.

## II. Standard of review.

On discretionary review of a small claims action, *see* Iowa Code

---

1. We will refer to defendants collectively as the county unless otherwise indicated.

§ 631.16, our standard of review depends on the nature of the case. *Hyde v. Anania*, 578 N.W.2d 647, 648 (Iowa 1998). If the action is a law case, we review the district judge's ruling on error. *Id.* Plaintiff Kelley's action against the county for compensation for damage caused to his property is an action at law. In such cases, we review the judgment of the district court for correction of errors at law. Iowa R.App.P. 4; *Meier v. Sac & Fox Indian Tribe*, 476 N.W.2d 61, 62 (Iowa 1991).

To the extent that Kelley raises constitutional claims, our review of the district court's decision on those issues is de novo. *Simonson v. Iowa State Univ.*, 603 N.W.2d 557, 561 (Iowa 1999).

### III. Plaintiff's takings claim.

### A. Preliminary matters.

The district court characterized the damage caused to Kelley's property by the officers as tortious conduct, rather than a taking of private property under the county's powers of eminent domain, and concluded that the county and sheriff were therefore immune from liability under Iowa Code sections 670.4(3) and 670.12 of the Municipal Tort Claims Act.

Before addressing the county and sheriff's statutory immunity under Iowa Code sections 670.4(3) and 670.12, we must first address whether the damage caused to Kelley's property amounts to a taking of private property under article I, section 18 of the Iowa Constitution for which compensation must be paid, or whether the damage to plaintiff's property is more in the nature of tortious conduct, subject to the immunity provisions of Iowa Code chapter 670. We begin our analysis with this issue because a claim for compensation under the takings clause of article I, section 18 of the Iowa Constitution would seem to exist independent of any statutory tort immunity provisions. *See Connolly v. Dallas County*, 465 N.W.2d 875, 878 n. 4 (Iowa 1991) (stating that the municipal immunity provisions at issue in that case, *see* Iowa Code section 613A.4(7) and (8), now codified at section 670.4(7) and (8), when read with the definition of "tort," now codified at section 670.1(4), would violate article I, section 18 of the Iowa Constitution as they would appear to exempt the county from liability for constitutional torts, i.e., a takings claim).[2]

---

**2.** Cases from other jurisdictions have held that takings claims are not barred by statutory immunity provisions. This rule is based on the idea that the right to sue for the alleged taking of private property arises directly from the state constitution and is independent of any right to sue under traditional tort theories. *See Rose v. City of Coalinga*, 236 Cal. Rptr. 124, 127, 190 Cal.App.3d 1627, 1633 (1987) ("The right to sue in inverse condemnation is 'fundamentally rooted' in [the California] Constitution, and the extent of a public entity's liability is fixed by the Constitution and not by rules of statutory or common law rights and responsibilities between private parties."); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980) (stating that Texas Constitution authorizes compensation for destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use); *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis.2d 1, 558 N.W.2d 83, 95 (1997) ("[S]overeign immunity will not bar recovery for a taking, because just compensation following a taking is a 'constitutional necessity rather than a legislative dole.' ") (citations and quotations omitted); *Zinn v. State*, 112 Wis.2d 417, 334 N.W.2d 67, 76 (1983) (stating doctrine of sovereign immunity cannot bar a takings claim because just compensation clause of Wisconsin Constitution amounts to waiver of sovereign immunity); Restatement (Second) of Torts § 985B cmt. a (1977) (stating that constitutional provisions prohibiting the taking of property for public use without just compensation have usually been held to be self-executing and to constitute a consent to suit); 26 Am.Jur.2d *Eminent Domain* § 169, at 592 (1996) ("doctrine of governmental immunity from liability does not apply where the injury complained of is the taking or damaging of private property for public use. without compensation"); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 18, at 45 (1988) (state constitutional prohibition against taking or damaging of private property for public use without just compensation overrides sovereign immunity of county).

## B. Takings law generally.

Article I, section 18 of the Iowa Constitution provides in pertinent part:

> **Eminent domain.** Private property shall not be *taken* for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the *improvement* for which it is taken.

(Emphasis added.)

■ In *Bormann v. Kossuth County Board of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998), *cert. denied, Girres v. Bormann*, 525 U.S. 1172, 119 S.Ct. 1096, 143 L.Ed.2d 96 (1999), we set forth the following analysis concerning takings claims: (1) Is there a constitutionally protected private property interest at stake? (2) Has this private property interest been "taken" by the government for public use? and (3) If the protected property interest has been taken, has just compensation been paid to the owner?

The alleged taking of private property in this case is the physical damage caused to Kelley's property by the officers when they entered the property to execute the arrest warrant. Thus, the facts of this case do not fit neatly within the other categories of takings cases such as the physical invasion or occupation of private property, or the regulation of the use of property by statute or ordinance. *See Bormann*, 584 N.W.2d at 316–17 (noting difference between physical invasion and regulation of use of property).

## C. Iowa authorities concerning the power of eminent domain and the exercise of police power.

■ In our cases, we have explained the distinction between the government's exercise of authority under the eminent domain and police power doctrines as follows:

> "Eminent Domain" is the taking of private property for a public use for which compensation must be given. On the other hand "Police Power" controls and regulates the use of property for the public good for which no compensation need be made.

*Kent v. Polk County Bd. of Supervisors*, 391 N.W.2d 220, 226 (Iowa 1986) (quoting *Hinrichs v. Iowa State Highway Comm'n*, 260 Iowa 1115, 1126, 152 N.W.2d 248, 255 (1967)); *see also Woodbury County Soil Conservation Dist. v. Ortner*, 279 N.W.2d 276, 278 (Iowa 1979).

■ With respect to the exercise of police power for the public health and welfare, we have stated:

> While the police power is very broad, and not capable of exact definition, it is not boundless, and, as a rule, is subject to constitutional limitations. *Property may be destroyed under this power, without notice or opportunity to be heard, and, without compensation to the owner, to prevent the spread of contagious diseases, to stay the progress of a devastating fire, and in other exigencies, where the public needs protection or defense.* Under this power, public nuisances may sometimes be abated; but, in all such cases, the necessity for summary action must exist, and one who would justify on the ground of necessity must be able to convince a jury that the occasion was present which authorized his act. . . .

*Waud v. Crawford*, 160 Iowa 432, 434, 141 N.W. 1041, 1041 (1913) (emphasis added). As one commentator has explained:

> [t]he term "regulatory taking" refers to situations in which the government exercises its "police powers" to restrict the use of land or other forms of property. This is often accomplished through implementation of land use planning, zoning and building codes. In contrast, a governmental entity exercises its eminent domain power or acts in an "enterprise capacity, where it takes unto itself private resources and uses them for the common good." Where the private

landowner will not sell the land, the government entity seeks condemnation of the property and pays a fair purchase price to be determined in court. On the other hand, an inverse condemnation claim is sought by a landowner when the government fails to seek a condemnation action in court.[3]

*Bormann,* 584 N.W.2d at 317 (quoting John W. Shonkwiler & Terry Morgan, *Land Use Litigation* § 1.02, at 6 (1986)).

The exercise of police power may, in some situations, amount to a taking of private property if it deprives a property owner of the substantial use and enjoyment of one's property. *See Iowa Coal Min. Co. v. Monroe County,* 555 N.W.2d 418, 431 (Iowa 1996) *(Iowa Coal II);* *Ortner,* 279 N.W.2d at 278. The point at which police power becomes so oppressive that it results in a taking is determined on a case-by-case basis. *Bormann,* 584 N.W.2d at 316; *Iowa Coal Min. Co. v. Monroe County,* 494 N.W.2d 664, 670 (Iowa 1993) *(Iowa Coal I);* *Ortner,* 279 N.W.2d at 278. This ad hoc approach applies a balancing test that is essentially one of reasonableness, *see Bormann,* 584 N.W.2d at 317, which asks whether the collective benefits of the regulatory action outweigh the restraint imposed upon the property owner, *see Easter Lake Estates, Inc. v. Polk County,* 444 N.W.2d 72, 76 (Iowa 1989); *Ortner,* 279 N.W.2d at 278. Factors to be considered in applying the test include: "(1) the economic impact of the regulation on the claimant's property; (2) the regulation's interference with investment-backed expectations; and (3) the character of the governmental action." *Bormann,* 584 N.W.2d at 316–17 (citing *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 648 (1978)).

Our case law provides some examples of the distinction between the legitimate exercise of police power and the exercise of power under eminent domain. For example, we have said that the forced removal of billboards, at the owner's cost, which are maintained in violation of Iowa Code chapter 306C (Junkyard Beautification and Billboard Control Act) is a valid exercise of police power of the state, not an exercise of the power of eminent domain for which compensation must be paid. *Iowa Dep't of Transp. v. Nebraska–Iowa Supply,* 272 N.W.2d 6, 14 (Iowa 1978), *overruled on other grounds by Estate of Grossman v. McCreary,* 373 N.W.2d 113, 114 (Iowa 1985); *see also Goodenow v. City Council,* 574 N.W.2d 18, 25 (Iowa 1998) (holding that city ordinance forcing landowner to mow grass and weeds growing on city-owned property at landowner's expense is proper exercise of police power and does not constitute a taking of private property); *Kent,* 391 N.W.2d at 226–27 (holding that county ordinance prohibiting persons from owning "dangerous and vicious animals" is valid exercise of police power and does not amount to a taking of private property); *Ortner,* 279 N.W.2d at 279 (holding that provisions of soil conservation statutes, which require landowners to terrace property at landowners' expense is a proper exercise of police power and does not constitute a taking of private property); *Walker v. Johnson County,* 209 N.W.2d 137, 139 (Iowa 1973) ("[w]here police power is properly exercised in limited situations it is well settled affected property owners are not entitled to prior notice and hearing, even where total destruction of the property is required to protect public health and public property," stating rule in context of claim based on the due process clauses of the Iowa and United

---

**3.** For example, the construction of public improvements or other government action may interfere with private property interests even though formal eminent domain proceedings under Iowa Code chapters 6A and 6B have not been instituted. In such cases, a property owner may seek compensation for an alleged taking of private property under inverse condemnation. *See Phelps v. Board of Supervisors,* 211 N.W.2d 274, 276 (Iowa 1973) (construction of bridge and causeway over river which caused greater flooding over adjacent property than previously existed was a taking within the meaning of Iowa Constitution).

States Constitutions); *Loftus v. Department of Agric.*, 211 Iowa 566, 581, 232 N.W. 412, 420 (1930) (concluding that statute authorizing the destruction of diseased cattle without compensation was a proper exercise of police power and did not deprive property owner of due process under Iowa and United States Constitutions).

### D. Other authorities and application of law to facts.

■ The district court judge found that the damage caused to Kelley's property was more in the nature of a tort and did not constitute a taking of private property within the meaning of article I, section 18 of the Iowa Constitution.

Upon our review, we agree with the district court's decision.

A. Through enactment of section 804.15,[4] the legislature has articulated the public policy that law enforcement officers may use force to enter private premises for the purpose of executing an arrest warrant. The use of force authorized by section 804.15, however, is not without limitation. According to restrictions imposed by the legislature, "such force as is reasonably necessary" may only be used when "a law enforcement officer has reasonable cause to believe that a person whom the officer is authorized to arrest is present on [the] private premises." *See* Iowa Code § 804.15.

In this case, plaintiff's property was damaged by law enforcement officers, who were exercising their authority under section 804.15, in the course of performing their public duties of enforcing the criminal laws. Enforcement of the criminal laws is clearly within the county's power to provide for the health, safety and welfare of its citizens. Plaintiff's property was

therefore damaged as a consequence of the county's exercise of police power and not as a consequence of the county's exercise of its power under eminent domain. Thus, the more narrow question we must decide is whether the county's exercise of police power in this case was unreasonable.

The district court judge impliedly found that the officers did not use unreasonable force to enter the premises. Based upon our review of the record, we agree with the district court's finding. We first point out that Kelley does not allege that the amount of force used by the officers to enter the residence was unreasonable. Additionally, the record shows that the officers chose to execute the warrant in the late evening hours because of the subject's reputation for assaultive and combative behavior. The officers also identified themselves and demanded entry before using force to enter the home. The record thus shows that the officers properly exercised their authority granted to them by Iowa Code section 804.15 when they forcibly entered the home.

We also believe that the county's right to provide for the safety and welfare of its citizens in enforcing the state's criminal laws and procedures outweighs any interference or economic impact of the officers' action on plaintiff's property as presented in this case. The damage caused to plaintiff's property in this case would seem to be more in line with those cases where property owners have been forced to bear some burden "for the public good," but where no taking of private property was found. *See Goodenow,* 574 N.W.2d at 25 (landowner forced to mow weeds and grass growing on city-owned property at landowner's expense); *Kent,* 391 N.W.2d at 221 (owner forced to give up pet lion); *Ortner,* 279 N.W.2d at 276 (landowners

---

4. Iowa Code section 804.15 states:

    If a law enforcement officer has reasonable cause to believe that a person *whom the officer is authorized to arrest* is present on any private premises, the officer may upon identifying the officer as such, demand that the officer be admitted to such

premises for the purpose of making the arrest. If such demand is not promptly complied with, the *officer may thereupon enter such premises to make the arrest, using such force as is reasonably necessary.*
   (Emphasis added.)

forced to terrace property at landowners' expense); *Iowa Dep't of Transp.*, 272 N.W.2d at 14 (owner of billboards forced to remove billboards at owner's expense).

B. Additionally, the damage to plaintiff's property seems to be more in the nature of a tort rather than a permanent deprivation of property, or creation of a permanent property interest, as contemplated by article I, section 18. For instance, if someone other than a non-governmental employee had broken into the residence and caused the same damage to Kelley's property as was done here, Kelley would have a private cause of action in tort for trespass and damages against that person. We will address this point further in the next division. We simply point out at this juncture that the present case can be distinguished from the inverse condemnation or permanent taking situation we found in *Bormann.* 584 N.W.2d at 321. This is because the property rights infringement in *Bormann* was more in the nature of an involuntary permanent easement on the neighbors' land, which situation does not exist in the present case. *Id.*

In *Bormann,* a county board of supervisors had approved the application of certain landowners to place their land in an "agricultural area." Nearby landowners challenged the board's action. We concluded that Iowa Code section 352.11(1)(a), which grants immunity from nuisance suits for farm operations located in an agricultural area, gave the applicant landowners the right to maintain a nuisance on their property that would affect the property of the nearby landowners. *Id.* This right to maintain a nuisance, we found, resulted in the granting of an involuntary easement by the county board of supervisors for the benefit of the applicant property owners, who were protected by the nuisance immunity. *Id.* We further concluded that the granting of such an easement by the county amounted to a taking of the neighbors' private property for public use in violation of the Fifth Amendment to the United States Constitution and in violation of arti-

cle I, section 18 of the Iowa Constitution. *Id.* We noted that government action need not amount to a physical invasion of the surface of the land in order for a taking to be found. *Id.* at 317.

C. In summary, we conclude that the damage caused to the doors on plaintiff's property by the officers was a reasonable exercise of police power and therefore does not amount to a taking of plaintiff's property within the meaning of article I, section 18 of the Iowa Constitution. Plaintiff therefore has not satisfied the second step in the takings analysis and is not entitled to compensation under that theory for damage caused to his property by the officers. *See id.* at 315. Other authorities support our conclusion. *See Patel v. United States,* 823 F.Supp. 696, 699 (N.D.Cal. 1993) (concluding that property damage caused to plaintiff's property by officers serving search and arrest warrants on occupants of property did not give rise to claim for inverse condemnation under California Constitution); *Customer Co. v. City of Sacramento,* 10 Cal.4th 368, 41 Cal. Rptr.2d 658, 895 P.2d 900, 913 (1995) (stating that efforts of law enforcement officers to apprehend a felony suspect cannot be likened to an exercise of the power of eminent domain and holding that property damage to plaintiff's liquor store and its contents caused by law enforcement officers while trying to apprehend a suspect did not amount to taking of private property under California Constitution); *McCoy v. Sanders,* 113 Ga.App. 565, 148 S.E.2d 902, 905 (1966) (concluding that landowner is not entitled to damages under Georgia Constitution for fish kill and damage to pond when police drained pond on plaintiff's property in search of murder victim); *Indiana State Police v. May,* 469 N.E.2d 1183, 1184 (Ind.Ct.App.1984) (concluding that damage caused to homeowner's property by police officers trying to apprehend murder suspect who took refuge in plaintiff's home was in the nature of a tort, for which state was immune under state tort claims act; damage did not amount to a

taking of private property under eminent domain power and thus homeowner was not entitled to compensation); *Blackman v. City of Cincinnati*, 140 Ohio St. 25, 42 N.E.2d 158, 160 (1942) (holding that state statute which makes it a crime to refuse to assist law enforcement officer in apprehending a suspect did not delegate eminent domain power to police officer so as to subject city for liability for damage to plaintiff's vehicle sustained when police officer ordered plaintiff to pursue another vehicle containing a fleeing suspect; owner of vehicle not entitled to compensation under Ohio Constitution); *Sullivant v. City of Oklahoma*, 940 P.2d 220, 226 (Okla.1997) (concluding that damage to plaintiff-landlord's property caused by police officers while executing search warrant of apartment in apartment complex owned by plaintiff did not amount to a taking of private property under the Oklahoma Constitution).[5]

We therefore affirm the decision of the district court on this issue.

### IV. Defendants' immunity under Iowa Code sections 670.4(3) and 670.12.

We concluded above that the damage caused to Kelley's property does not amount to a taking of private property within the meaning of article I, section 18 of the Iowa Constitution for which compensation must be paid. We also noted that Kelley's claim for compensation seems to be more in the nature of a tort. In that regard, the district court concluded, however, that the county and sheriff were immune from liability based on tort under Iowa Code chapter 670, the Municipal Tort Claims Act. Plaintiff contends this was error.

Pursuant to Iowa Code section 670.4(3), a municipality or county has no liability for

> [a]ny claim based upon *an act . . . of an officer or employee of the municipality, exercising due care, in the execution of a statute,* . . . whether the statute, . . . is valid, . . . .

(Emphasis added.) Iowa Code section 670.12 extends this immunity to officers and employees of municipalities:

> [a]ll officers and employees of municipalities are not personally liable for claims which are exempted under section 670.4, except claims for punitive damages, and actions permitted under section 85.20. An officer or employee of a municipality is not liable for punitive damages as a result of acts in the performance of a duty, unless actual malice

---

5. Additionally, even though specific reference to "damage to property" is found in the takings clauses of the California, *see* Cal. Const. art. I, § 19, Georgia, *see* Ga. Const. art. I, § 3, para. 1, and Oklahoma Constitutions, *see* Okla. Const. art. II, § 24, courts in those states have concluded that damage to private property caused by law enforcement officers while performing their official duties does not constitute a taking of private property. *See Customer Co.*, 41 Cal.Rptr.2d 658, 895 P.2d at 913; *McCoy*, 148 S.E.2d at 905; *Sullivant*, 940 P.2d at 226.

Cases from some jurisdictions have reached a contrary result. *See Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 41–42 (Minn. 1991) (holding that damage caused to property by police in the course of apprehending a suspect is *damage* within the language of Minnesota Constitution for which compensation must be paid); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980) (holding that plaintiffs stated a claim for compensation un-

der Texas Constitution for damage caused by police officers to property while trying to capture escaped prisoners who took refuge in plaintiff's home); *Wallace v. City of Atlantic City*, 257 N.J.Super. 404, 608 A.2d 480, 483 (Law Div.1992) (holding that landlord whose property was destroyed during the execution of a search warrant was entitled to compensation under New Jersey Constitution). The *Wegner* and *Steele* cases can be distinguished from the present case, however, based on the fact that the Minnesota and Texas Constitutions contain language different from our Iowa Constitution. *See Wegner*, 479 N.W.2d at 40 (Article I, section 13 of Minnesota Constitution states "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation first paid or secured."); *Steele*, 603 S.W.2d at 791 (Article I, section 17 of the Texas Constitution states "[n]o person's property shall be taken, damaged or destroyed . . . without adequate compensation being made, . . . .").

**484**

or willful, wanton and reckless misconduct is proven.

The district court characterized the damage caused to Kelley's property by the officers as tortious conduct, rather than a taking of private property under the county's powers of eminent domain. Additionally, the court concluded that the officers exercised due care for purposes of section 670.4(3) in entering the residence pursuant to their authority under Iowa Code section 804.15 and that the county was therefore immune from liability under Iowa Code section 670.4(3).

■ Upon our review, we agree with the district court's conclusion that the county is immune under Iowa Code section 670.4(3) for any tort claim by plaintiff Kelley for compensation. As we concluded above, the officers properly exercised their authority granted to them by Iowa Code section 804.15 when they forcibly entered the residence. It therefore follows that the officers met the "exercising due care" requirement of Iowa Code section 670.4(3). Cf. May, 469 N.E.2d at 1183–84 (state was immune from liability for damage caused by state police officers to private property under state tort claims act which grants immunity to public body for torts committed while enforcing a state law).

■ We also point out that the language "exercising due care" found in section 670.4(3) acts as a check on the county's exercise of police power to enforce the criminal laws. This is because a municipality cannot avail itself of the immunity provisions of sections 670.4(3) and 670.12 if the government employees do not exercise due care in executing a statute in the first instance. Thus, the possibility remains that a property owner may be entitled to compensation for damage to property when law enforcement officers fail to use due care in performing their statutory duties, which is not the situation here.

We therefore conclude that the county, under Iowa Code section 670.4(3), and the sheriff and his employees, under section 670.12, have immunity concerning Kelley's tort claim for compensation for damage caused by the officers to his property. The decision of the district court is affirmed on this issue.

### V. Disposition.

Other issues raised by plaintiff either were not preserved in district court or have no merit.

We conclude that damage caused to plaintiff's property by defendants during the execution of the arrest warrant does not amount to a taking of private property under article I, section 18 of the Iowa Constitution for which compensation must be paid.

We further conclude that the district court properly decided that defendant Story County and its sheriff are immune under Iowa Code sections 670.4(3) and 670.12 concerning any tort claim by plaintiff for compensation for damage caused to his property. We therefore affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except CARTER, J., who takes no part, and SNELL, J., who dissents and is joined by LAVORATO, J.

SNELL, Justice (dissenting).

I respectfully dissent.

Large principles and far reaching consequences are sometimes born from small cases. That is the situation here. Jim Kelley, plaintiff, owned a house that he rented to Penny Ball. The police broke into the house in order to arrest William Vary, a frequent guest of Ball. In doing so, the police damaged two doors for which Kelley asks to be compensated in the amount of $1099.60 for repairs. Kelley did not live in the house and was not present at the time of the incident.

The majority holds that the Iowa Constitution does not provide for any compensation to Kelley, the owner of the house, who, though innocent of any fault, suffered

damage to his house caused by the police. I believe the majority's strictured view of the Iowa Constitution is legally unnecessary and causes an inequitable result.

Additionally, the majority holds that Kelley is barred from collecting damages from anybody because the doctrine of sovereign immunity prevents assessment of damages against the police or Story County. This vestige of the doctrine remains though government has assumed responsibility for payment of some other types of claims. The fallout from these tandem rulings is that Kelley bears the whole loss to his property apparently as the price an innocent citizen must pay for government acts legally undertaken to enforce the law.

Today, plaintiff Kelley suffers a property loss of $1099.60. Tomorrow, by a police incursion that precipitates escalating damages, the property loss could reach a hundred times Kelley's loss or more. Should a property owner be expected, as a good citizen, to bear this loss while state and county government are shielded from paying for any of it? I think not. Yet, the principles established by this small claims court case will apply and control all future cases, small or large, to deny any compensation for property damage caused by the police under these circumstances.

Anticipating that acts of government may cause damage to the property of a private citizen, the framers of the Iowa Constitution crafted language mandating the payment of "just compensation." Article I, section 18 of our Iowa Constitution provides as follows:

> Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvements for which it is taken.

This language is clearly broad enough to include Kelley's claim for property damage. The apparent intent of the drafters of this constitutional provision was to expect government takings from time to time but to order that payment be made for the property taken.

The text of article I, section 18 of the Iowa Constitution, as I have quoted it, is from the 1885 Code of Iowa. That language has never been amended. Iowa's first constitution, adopted in 1851, succinctly stated the legal principle:

> Private property shall not be taken for public use without just compensation.

Iowa Const. art. I, § 18 (1851). It was referred to in *Henry v. Dubuque & Pac. R.R.*, 2 Coles 288 (Iowa 1855), as follows:

> That language of the constitution means that the person whose property is taken for public use shall have a fair equivalent in money for the injury done him by such taking; in other words, that he shall be made whole, so far as money is a measure of compensation, we are equally clear. This just compensation should be precisely commensurate with the injury sustained, by having the property taken; neither more nor less.

*Henry*, 2 Coles at 300.

The majority quotes from the present Code of Iowa that embosses as a heading to article I, section 18 the words "Eminent Domain." Those words appear in the 1897 Code of Iowa, not by virtue of any constitutional change, but by the gratuitous captioning work of an unknown editor. The words "Eminent Domain" are not, nor have they ever been, a part of article I, section 18 of the Iowa Constitution. They do not, therefore, limit or have any bearing on our consideration of the breadth of constitutional meaning contained in section 18.

For this reason, we should not be diverted into a comparison of eminent domain cases and police power cases when the referents are not even in the constitutional language. Nor does the reliance by the majority on the rules of inverse condemnation have any application to this case. *See*

*generally Bormann v. Kossuth County Bd. of Supervisors,* 584 N.W.2d 309 (Iowa 1998). The *Bormann* case pertained to an invasion by noxious odors from a hog confinement facility. The question was whether a "taking" could occur when there had been no physical invasion or occupancy of plaintiff's property. *Bormann* held that a "taking" had occurred and set up rules, relied on by the majority, to determine if a taking would occur under circumstances of this nature. *Id.* at 315–22.

Although appropriate in *Bormann* and like cases, these rules are inapt to resolve the issue in the present case.

*Bormann,* in its discussion of takings jurisprudence, recognized the rules that I believe should be applied in the case at bar. We said:

(1) **Takings jurisprudence, generally.** There are two categories of state action that *must* be compensated without any further inquiry into additional factors, such as the economic impact of the governmental conduct on the landowner or whether the regulation substantially advances a legitimate state interest. The two categories include regulations that (1) involve a permanent physical invasion of the property or (2) deny the owner all economically beneficial or productive use of land. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). These two categories are what the neighbors term "per se" takings. The per se rule regarding the first category—physical invasion—was firmly established in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 425, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868, 886 (1982).

. . . .

(a) **Trespassory invasions of private property by government enterprise.** Generally when the government has physically invaded property in carrying out a public project and has not compensated the landowner, the United States Supreme Court will find that a per se taking has occurred. *See* [John W.] Shonkwiler [ & Terry Morgan, *Land Use Litigation* ] § 10.01(1), at 369.

. . . .

In a more recent case, the Court applied the same rule to a state law that authorized third parties to physically intrude upon private property. *Loretto,* 458 U.S. at 432 n. 9, 102 S.Ct. at 3174 n. 9, 73 L.Ed.2d at 880 n. 9 (holding that a New York statute requiring the owners of apartment buildings to permit cable television operators to install transmission facilities on their property was in violation of the Just Compensation Clause).

*Id.* at 316–17.

Other rules enunciated in *Bormann,* and relied on by the majority, apply in all cases other than a per se taking case. Those rules pertain to regulatory takings, on a case-by-case basis, balancing the property owner's interests against the reasonableness of regulatory action. *See id.* at 315–22.

This is a per se taking case. The doors in Kelley's house were damaged by the police breaking in; a physical invasion thereby resulted. A per se "taking" by the acts of government officers occurred which obviates the need to consider rules that balance a property owner's interests against police regulatory action. To apply these balancing rules, that apply to other than per se takings, to see if a taking has occurred in the case at bar, is an after the fact analysis. The undisputed fact that Kelley's doors were damaged legally determines that a "taking" of this property occurred.

For this same reason, cases debating the legitimate exercise of police power and eminent domain power are irrelevant. The case at bar should not even consider whether the use of force by the police was reasonable. In framing its analysis based on this point, the majority has diminished the language of article I, section 18, of the Iowa Constitution, ranking it on the same

level for analysis as statutory language articulating police powers, found in Iowa Code section 804.15. By this approach the majority has strayed from focusing on, and giving primary importance to, the words of the Constitution.

The salient words of our constitution, for this case, are: "Private property shall not be taken for public use without just compensation. . . ." Iowa Const. art. I, § 18.

These words convey a broad meaning and are all inclusive. Our construction of them should not reduce their universal application simply because of the brevity of language. While the constitutions of other states may include additional words to specify compensable property rights, that fact does not change the meaning and application of the words in the Iowa Constitution.

I believe the proper rationale for deciding the meaning of the words "taken for public use" in the Iowa Constitution is set out by the Minnesota Supreme Court in the case of *Wegner v. Milwaukee Mutual Insurance Co.*, 479 N.W.2d 38 (Minn.1992). With facts remarkably similar to those in our present case, the Minnesota court held that its constitution mandated that compensation be paid for a taking of property by the government. *Wegner*, 479 N.W.2d at 42.

In *Wegner*, the Minneapolis Police Department severely damaged a house while attempting to apprehend an armed suspect. Article I, section 13, of the Minnesota Constitution provides: "Private property shall not be taken, destroyed or damaged for public use without justification, first paid or secured."

The Minnesota court viewed this provision with the following rationale:

This provision "imposes a condition on the exercise of the state's inherent supremacy over private rights."

This type of constitutional inhibition "was designed to bar government from forcing some people alone to bear public burdens which, in all fairness and jus-

tice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

*Id.* at 40.

In *Wegner*, the city made exactly the same argument as is made in the present case, where Kelley is denied compensation. The city of Minneapolis contended that there was not a taking for public use because the actions of the police constituted a legitimate exercise of the police power. To this argument the court answered:

The police power in its nature is indefinable. However, simply labeling the actions of the police as an exercise of the police power "cannot justify the disregard of the constitutional inhibition."

. . . .

Consequently, the issue in this case is not the reasonableness of the use of chemical munitions to extricate the barricaded suspect but rather whether the exercise of the city's admittedly legitimate police power resulted in a "taking."

*Id.* (citations omitted).

The munitions used by the Minneapolis police were flash-bang grenades that broke every window in the house, went through walls, and covered walls and furniture with a pink film from tear gas. The estimated damages were $71,000.

The city of Minneapolis also argued that no compensation was owed based on the doctrine of public necessity. Rejecting this argument, the Minnesota Supreme Court reasoned:

Once a "taking" is found, compensation is required by operation of law. Thus, if the doctrine of public necessity were to apply to a given fact situation, no taking could be found under Minn. Const. art. I, § 13.

We are not inclined to allow the city to defend its actions on the grounds of public necessity under the facts of this case. We believe the better rule, in situations where an innocent third par-

ty's property is taken, damaged or destroyed by the police in the course of apprehending a suspect, is for the municipality to compensate the innocent party for the resulting damages. The policy considerations in this case center around the basic notions of fairness and justice. At its most basic level, the issue is whether it is fair to allocate the entire risk of loss to an innocent homeowner for the good of the public. We do not believe the imposition of such a burden on the innocent citizens of this state would square with the underlying principles of our system of justice. Therefore, the City must reimburse Wegner for the losses sustained.

*Id.* at 42 (citations omitted).

The Texas Supreme Court agrees with the rationale of the Minnesota Supreme Court and has held that compensation is provided under the Texas Constitution. *See Steele v. City of Houston*, 603 S.W.2d 786 (Tex.1980). In *Steele*, a group of escaped prisoners took refuge in a home, not then occupied by the owner or his renters. When the police discovered the prisoner's location, they discharged incendiaries into the home in order to burn out the prisoners. On arriving at the scene, the fire department was prevented by the police from stopping the fire. The police action resulted in the destruction of the house and all of the personal property of the renters. The owner and renters sued the City of Houston claiming damages under the Texas Constitution.

The Texas Constitution provides for the payment of compensation to a person whose property is "taken, damaged or destroyed for or applied to public use." Texas Const. art. I, § 17. Commenting on these words, the Texas Supreme Court said:

The taking, the damaging, or the destruction of property are often treated, more or less, as synonyms, but the terms are different and have different historical origins. The underlying basis for compensating one whose property is

taken, damaged or destroyed for public use, may, however, be the same, for the prohibition against uncompensated takings "was designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960); *Y.M.C.A. v. United States*, 395 U.S. 85, 89, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969).

*Steele*, 603 S.W.2d at 789.

The Texas Supreme Court then observed that, through its cases, the court had moved "beyond the earlier notion that the government's duty to pay for taking property rights is excused by labeling the taking as an exercise of police powers." *Id.* at 789. Further reaching back in history, the court recalled that uncompensated governmental taking of property was unlawful before the Magna Carta. *Id.* In concluding, the Texas court said:

The City argues that the destruction of the property as a means to apprehend escapees is a classic instance of police power exercise for the safety of the public. We do not hold that the police officers wrongfully ordered the destruction of the dwelling; we hold that the innocent third parties are entitled by the Constitution to compensation for their property.

*Id.* at 793.

In *Wallace v. City of Atlantic City*, 257 N.J.Super. 404, 608 A.2d 480 (Law Div. 1992), the Atlantic City police damaged three doors while breaking into a residence to execute a search warrant. The total cost of labor and materials necessary to repair the doors was $900.97. The Superior Court held that this act by police constituted a "taking" under the United States and New Jersey Constitutions that entitled the property owner to just compensation in the amount of the damages. *Wallace*, 608 A.2d at 483.

I do not believe that the words "damaged or destroyed" used in the Minnesota and Texas Constitutions are of any distinguishing legal significance from the word "taken" contained in article I, section 18 of the Iowa Constitution. Any property damaged or destroyed has been taken from its owner whether in whole or in part by virtue of the owner's immediate diminished use of it.

The framers of the Iowa Constitution said it all by providing for "just compensation" to be paid when property is "taken for public use." Additional words like "damaged" or "destroyed," are nothing but a redundancy, conceptually and legally.

Nor should constitutional language be parsed to cover Kelley's doors for compensation as a "taking" if the police hauled them away, but not as a "taking," if the damaged doors were left hanging on their hinges. Logic, equitable principles, and constitutional law support compensating Kelley for his property loss, taken through government acts envisioned by the framers of our constitution.

I would reverse and remand this case for entry of judgment against Story County in favor of plaintiff Kelley as commanded by the law of our Iowa Constitution, article I, section 18.

LAVORATO, J., joins this dissent.